NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0710-15T1

DONNA SLAWINSKI,

     Plaintiff-Appellant,

v.

MARY E. NICHOLAS,

     Defendant-Respondent.

_____

<div style="border:1px solid">

**APPROVED FOR PUBLICATION**

**December 6, 2016**

**APPELLATE DIVISION**

</div>

Submitted October 17, 2016 — Decided December 6, 2016

Before Judges Fisher, Ostrer and Leone.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FD-09-2217-12.

Donna Slawinski, appellant pro se (Michael J. Evans, on the brief).

Respondent has not filed a brief.

The opinion of the court was delivered by

OSTRER, J.A.D.

In this appeal, we must identify the appropriate standard for reviewing a motion to modify a consent order granting grandparent visitation.  The trial court held that the defendant-mother was empowered to terminate such a consent order unilaterally since there was no proof by the plaintiff-

grandmother that visitation was necessary to avoid harm to the child. We conclude the trial court erred.

Once a parent enters into a consent order allowing grandparent visitation, a request to modify must be considered in accordance with the framework established in Lepis v. Lepis, 83 N.J. 139, 157-59 (1980), and applied to custody and visitation disputes. See, e.g., Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 152 (App. Div.), certif. denied, 178 N.J. 34 (2003). That is, the parent must make a prima facie showing of changed circumstances as would warrant relief. Once made, the court should allow reasonable discovery if warranted and conduct a plenary hearing if genuine issues of material fact remain. The moving parent, not the non-moving grandparent, bears the burden to prove that there has been a change of circumstances and that modifying the order would not cause harm to the child. Consequently, we reverse and remand for the court to consider defendant's modification motion in light of that standard.

Defendant apparently exercises sole legal and residential custody of her daughter, L.K. (Lilly).[1] The grandparent visitation order was entered on January 13, 2015. In

---

[1] Although the order granting sole custody is not in the record, the court described it at the hearing on the motion. Also, we use a pseudonym to protect the child's privacy.

defendant's certification supporting her motion, she contended the order was entered with her consent. It provided that plaintiff, the paternal grandmother, would enjoy visitation with Lilly, then six years old, on the first weekend of every month beginning February 2015 and ending January 2016. Pickup would occur on Friday, 6:00 p.m., and drop-off on Sunday, 5:00 p.m. Visitation could occur in New Jersey or at plaintiff's timeshare in the Poconos, but not in Ohio where plaintiff resided. Plaintiff was also granted a week of vacation with Lilly in July 2015.

Defendant contended she consented because she thought Lilly "would like to have contact with the grandmother and that it would be a positive experience for her." However, she asserted that, after four visits, it became clear this was not so. She said: "The child returns very upset from the visits. It takes her days to return to her regular mood. The child starts to cry at the mere mention of the grandmother. . . . She seems traumatized from the contact." Defendant contended Lilly asked her not to make her go again. Defendant stated that Lilly also told her pediatrician she did not want to see plaintiff.

Defendant criticized plaintiff's care of Lilly, alleging plaintiff ignored Lilly's hygiene. Plaintiff claimed that Lilly did not bathe during her weekend visits; her hair was not

combed; and she once returned without underwear, despite having been sent with "a weekend's worth of clothing." Defendant also complained that Lilly's father was present during the May 2015 visit, even though, allegedly, his "visitation was suspended pursuant to prior court order."[2] Defendant stated she was concerned that the grandparent visitation was "detrimental to [Lilly's] mental health" and asked that it be terminated.

On August 28, 2015, the motion was heard by a judge other than the one who entered the January 2015 order. Plaintiff did not file written opposition to the motion according to our record, but counsel appeared on her behalf. He contended that defendant's motion should be considered under the Lepis framework and there was insufficient evidence to establish a prima facie case of changed circumstances. He argued expert psychological testimony was required to support defendant's allegations.

Defense counsel argued defendant should not bear the burden to demonstrate grounds to terminate visitation inasmuch as the January 2015 order was entered by consent without any judicial findings that the visitation was beneficial. Counsel argued,

---

[2] The record does not include such an order. Moreover, defendant admitted at the hearing that Lilly's father had been granted parenting time in New Jersey, but chose not to exercise it. Defendant's counsel contended a child support warrant had been issued for his arrest.

"[T]here is no burden that my client has to do anything other than say this is not working out, I tried."

The judge agreed. Since the order was entered by consent, the judge declared that defendant was entitled to terminate visitation unless plaintiff could demonstrate, by a preponderance of the evidence, "that denial of visitation would result in harm to the child." As plaintiff had not done so, the court entered an order terminating grandparent visitation.

Notwithstanding our general deference to Family Part decisions, see Cesare v. Cesare, 154 N.J. 394, 413 (1998), we are compelled to reverse when the court does not apply the governing legal standards. Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008). We owe no special deference to the trial judge's legal determinations. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Our courts highly value the settlement of litigation, recognizing that parties to a dispute are usually best positioned to discern the most mutually advantageous outcome. Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008). This policy applies with great force to family disputes, given the inter-personal strife and myriad factual issues that complicate judicial resolution. See Konzelman v. Konzelman, 158 N.J. 185, 193 (1999) ("New Jersey has long espoused a policy favoring the

use of consensual agreements to resolve marital controversies."); Bisbing v. Bisbing, 445 N.J. Super. 207, 218 (App. Div.) (agreement regarding custody), certif. granted, ___ N.J. ___ (2016). Absent fraud or unconscionability, our courts will enforce family-related agreements as they would any contractual agreement. Quinn v. Quinn, 225 N.J. 34, 45-47 (2016).

But our courts' commitment to enforce such agreements is tempered by its equitable power to review and modify support and custody orders upon a showing of changed circumstances. Lepis, supra, 83 N.J. at 145-46; see also Quinn, supra, 225 N.J. at 46. Specifically, with respect to agreements between parents regarding custody or parenting time, "[a] party seeking modification . . . must meet the burden of showing changed circumstances and that the agreement is now not in the best interests of a child." Abouzahr, supra, 361 N.J. Super. at 152; see also Hand v. Hand, 391 N.J. Super. 102, 103 (App. Div. 2007). Similarly, a grandparent visitation order entered after an adjudication is "subject to modification at any time on showing of changed circumstances." Mimkon v. Ford, 66 N.J. 426, 437-38 (1975). We have found in child custody disputes between parents that this showing remains the same whether the prior arrangement was forged through adjudication or agreement. Todd

v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993) ("A judgment, whether reached by consent or adjudication, embodies a best interests determination. . . . [A] moving party must bear the threshold burden of showing changed circumstances which would affect the welfare of the children."). Whether the same uniformity of treatment should apply to grandparent visitation orders appears to be a matter of first impression.

We recognize that a parent's fundamental right to raise a child as he or she sees fit encompasses the authority to determine visitation by third parties, including grandparents. See Moriarty v. Bradt, 177 N.J. 84, 114-15 (2003), cert. denied, 540 U.S. 1177, 124 S. Ct. 1408, 158 L. Ed. 2d 78 (2004). Yet, that autonomy gives way to the need to protect the child from harm. Id. at 115. Thus, "grandparents seeking visitation . . . must prove by a preponderance of the evidence that denial of the visitation they seek would result in harm to the child." Id. at 88. "If the court agrees that the potential for harm has been shown, the presumption in favor of parental decision making will be deemed overcome." Id. at 117.

Still, proof of harm involves a greater showing than simply the best interests of the child. Id. at 116 (stating that a dispute between a "fit custodial parent and the child's grandparent is not a contest between equals[,]" consequently

"the best interest standard, which is the tiebreaker between fit parents, is inapplicable").  Substantively, it is a "heavy burden."  Major v. Maguire, 224 N.J. 1, 18 (2016); cf. Fawzy v. Fawzy, 199 N.J. 456, 479 (2009) ("The threat of harm is a significantly higher burden than a best-interests analysis.").  The harm to the grandchild must be "a particular identifiable harm, specific to the child."  Mizrahi v. Cannon, 375 N.J. Super. 221, 234 (App. Div. 2005).  It "generally rests on the existence of an unusually close relationship between the grandparent and the child, or on traumatic circumstances such as a parent's death."  Daniels v. Daniels, 381 N.J. Super. 286, 294 (App. Div. 2005).  By contrast, missed opportunities for creating "happy memories" do not suffice.  Mizrahi, supra, 375 N.J. Super. at 234.  Only after the grandparent vaults the proof-of-harm threshold will the court apply a best-interests analysis to resolve disputes over visitation details.  Moriarty, supra, 177 N.J. at 117.

But nothing about a parent's right to autonomy warrants allowing a parent to unilaterally modify or terminate a consent order on grandparent visitation.  The parent effectively waives that autonomy by entering into the order, just as a parent waives rights when entering into any other consent order governing custody or visitation.  Given our respect for the

consensual resolution of family-related disputes and the stability such agreements achieve, modification of a consent order governing grandparent visitation must be considered according to the same Lepis changed circumstances framework applicable to other custody and visitation orders.

Other courts that have considered the issue have recognized that, once a parent enters into a consent order governing grandparent visitation, the parent may not unilaterally withdraw or require the grandparent to establish a right to visitation as if there had been no order at all. See Ingram v. Knipper, 72 P.3d 17, 22 (Okla. 2003) ("Having agreed to the initial grant of visitation with Grandfather, Mother cannot in this subsequent proceeding litigate the issue of harm without showing a change in circumstances . . . ."); Lovlace v. Copley, 418 S.W.3d 1, 29 (Tenn. 2013) ("Having once afforded parents the opportunity to rely upon the protection of the presumption of superior rights to the care, custody, and control of their children in the initial grandparent visitation proceeding, no constitutional principle demands that parents again be afforded a presumption of superior rights in a subsequent grandparent visitation modification proceeding.").

Following the procedural guidance set forth in Lepis, a party seeking modification must present evidence to establish a

prima facie case of changed circumstances relating to the visitation. Lepis, supra, 83 N.J. at 157; R.K. v. F.K., 437 N.J. Super. 58, 61-62 (App. Div. 2014). But not any change in circumstance will suffice; rather, the changed circumstances must be such "as would warrant relief" from the provisions involved. Lepis, supra, 83 N.J. at 157. Upon this initial showing, appropriate discovery shall proceed if warranted. Ibid. Our courts have long emphasized the need for a thorough examination of the merits of the movant's showing. See Sheehan v. Sheehan, 51 N.J. Super. 276 (App. Div.), certif. denied, 28 N.J. 147 (1958). Moreover, the court shall hold a plenary hearing if genuine issues of material fact remain. Lepis, supra, 83 N.J. at 159.

The movant's burden within this procedural framework is to prove that there has been a change of circumstances and that this change warrants revision of the original resolution of the matter based on the factors and standards that otherwise govern. "The standard that governs an application for modification of a property settlement agreement is the same standard that applies at the time of the original judgment of divorce." Miller v. Miller, 160 N.J. 408, 420 (1999) (considering alimony modification); see also Lepis, supra, 83 N.J. at 157-58 (stating that once a supported spouse demonstrates an increase in need,

the court reviews the supporting spouse's ability to pay); Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 352 (App. Div. 2009). In a case of visitation or custody involving two parents, the court revisits the issue of what is in the best interests of the child. Baures v. Lewis, 167 N.J. 91, 116 (2001) ("A motion for a change in custody . . . will be governed initially by a changed circumstances inquiry and ultimately by a simple best interests analysis.").

Consistent with this approach, the court should apply the standard governing grandparent visitation if the movant-parent also succeeds in establishing changed circumstances. That is to say, the court must consider whether or not the modification of a grandparent's visitation will cause harm to the child, as distinct from considering the best interests of the child.[3] If the modification will not cause harm, the court must grant the modification even if the grandparent could show doing so was contrary to the child's best interests.

When the parent is the movant, the parent bears the burden to establish grounds for modification. See Beck v. Beck, 86 N.J. 480, 496 n.8 (1981) ("[W]hen seeking joint custody after an

---

[3] In this respect, we part company with the conclusion in Ingram, supra, 72 P.3d at 22, and Lovlace, supra, 418 S.W.3d at 23, that a change in circumstances would trigger a best interests analysis.

initial custody determination has been made, even a parent enjoying such a relationship must satisfy the same burden of proof as applies to anyone seeking to change a custody decree, namely, a change of circumstances warranting modification."); Abouzahr, supra, 361 N.J. Super. at 152 (assigning burden to show change of circumstances and child's best interests to "party seeking a modification"); Sheehan, supra, 51 N.J. Super. at 287 (stating "the party seeking a modification bears the burden of proof").

Thus, in a grandparent visitation case, the parent seeking modification bears the burden to prove changed circumstances and that the child would not suffer a particular, identifiable, child-specific harm, see Mizrahi, supra, 375 N.J. Super. at 234, if modification were ordered. Given that a grandparent's burden to prove harm is more onerous than satisfying a best interests test, the parent's burden to prove the absence of harm is less onerous than the best interests test. See Moriarty, supra, 177 N.J. at 113 (noting that a best interests test can be satisfied although the child suffers no harm) (citing Watkins v. Nelson, 163 N.J. 235, 248 (2000)); cf. Morgan v. Morgan, 205 N.J. 50, 63-65 (2011) (noting that a custodial parent's burden to prove good faith and lack of harm in order to remove the child is less onerous than a showing of best interests). Once the parent

establishes changed circumstances and the absence of harm, the court must grant the parent's requested modification.

We have no difficulty finding that defendant's allegations supporting the termination of visitation — that plaintiff neglected Lilly's hygiene, and Lilly's visits caused great emotional distress — suffice as a prima facie showing of changed circumstances and suggest the child would not be harmed should visitation terminate. But plaintiff should be afforded the opportunity to rebut defendant's claims through competent evidence. For example, plaintiff may counter defendant's claim of changed circumstances with evidence, if it exists, that the child enjoyed the visits, displayed no signs of discomfort or emotional turmoil, and her hygiene was appropriately addressed. If the court ultimately finds, upon the conclusion of discovery or after a plenary hearing, that defendant has not proved both changed circumstances and the absence of harm to the child from terminating visitation, then termination is unwarranted, and the prior order must remain intact. On the other hand, if defendant satisfies her burden to prove changed circumstances and absence of harm, then the court must grant defendant her requested relief.

In conclusion, the trial court erred in granting defendant the power to unilaterally terminate the visitation that the

13

consent order granted. The court also erred in imposing on plaintiff the burden to present the same proofs required if there had been no consent order at all. We therefore remand the motion to the trial court to apply the standard we have set forth.[4] We express no views as to the ultimate outcome.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] We recognize that the consent order permitted visitation only through January 2016. However, we do not deem the dispute moot, as the court is empowered to award plaintiff compensatory time if it ultimately determines that defendant has not met her burden to terminate visitation.

A-0710-15T1