**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0318-16T2

JANNA MANES, f/k/a
JANNA MANES-JEROW,

    Plaintiff-Appellant,

v.

JOHN GORDON JEROW,

    Defendant-Respondent.

_____

          Argued May 24, 2018 — Decided August 22, 2018

          Before Judges Simonelli, Haas and Rothstadt.

          On appeal from Superior Court of New Jersey,
          Chancery Division, Family Part, Essex County,
          Docket No. FM-07-2345-13.

          Cheryl E. Connors argued the cause for
          appellant (Tonneman & Connors, LLC, attorneys;
          Cheryl E. Connors, of counsel and on the
          briefs).

          Jonathan H. Blonstein argued the cause for
          respondent (Weinstein, Lindemann & Weinstein,
          PC, attorneys; Cynthia Borsella Lindemann, of
          counsel and on the brief; Jonathan H.
          Blonstein, on the brief).

PER CURIAM

In this post-judgment dissolution matter, plaintiff, Janna Manes, appeals from a May 31, 2016 Family Part order, entered without a plenary hearing, denying her motion for a change in the parties' previously agreed to shared custody plan for her and defendant John Gordon Jerow's then seven-year-old son. She also appeals from a September 2, 2016 order, terminating the parties' arrangement of jointly maintaining the employment of the child's nanny during defendant's shared custody time. The Family Part judges who considered plaintiff's applications determined plaintiff did not meet her burden of proof to establish a showing of changed circumstances, and that the termination of the nanny's service while the child was in defendant's physical custody was appropriate under the circumstances.

On appeal, plaintiff contends that the certifications she filed in support of her motions established a change in circumstances warranting a change in custody and parenting time, or at least a plenary hearing on the issue, in light of the conflicting certifications filed by the parties about their child's well-being. Moreover, she avers that the manner in which the first motion judge conducted an interview of the child was improper, as it was not consistent with court rules. Finally, she contends the second judge improperly terminated defendant's

2

obligation to use the nanny and share in the expense of employing her. We disagree and affirm.

The facts derived from the motions' records are summarized as follows. The parties were married in 2005, divorced in 2014, and have both since remarried. They have one child, a son who will shortly turn nine years old. Defendant has another child with his new wife.

The parties' July 14, 2014 dual final judgment of divorce incorporated a property settlement agreement (PSA) that included a custody and parenting plan (CPP). According to their agreements, the parties arranged to share custody of their son, with neither parent technically designated as the child's parent of primary residence (PPR). They also agreed to share the expenses of a "[j]ointly engaged and agreed-upon private nanny" who would care for the child during both parents' shared custody time.

The parties operated under this arrangement for two years without court involvement until difficulties with the shared-custody arrangement arose. In February 2016, the parties participated in mediation that resulted in an agreement to continue to use the nanny "until the end of [their son's] school year," after which plaintiff would "be solely liable for [the nanny's] compensation." (Emphasis added). Moreover, the nanny would "no longer be a jointly engaged nanny." This agreement also stated

that "[p]arties will meet in May to determine [the son's] summer activities and child care arrangements[,]" and that the provision concerning the nanny's services up to the end of the school year would "have no bearing on the decision for future child care on [defendant's] days."

Within a month of the parties entering into the agreement, plaintiff filed a motion seeking a change in the shared custody arrangement. Plaintiff sought an order that she be designated "as the [PPR] and defendant as the Parent of Alternate Residence[,]" and defendant's shared custody time be changed to every other weekend and "Wednesday and Thursday from 5:00 p.m. until 8:00 p.m." In the alternative, the existing arrangement could continue if defendant agreed to retain the nanny from Monday to Friday, during designated times and "in plaintiff's home or elsewhere under the nanny's or plaintiff's supervision." Plaintiff also sought an order directing their son receive therapy "by a licensed psychologist, with the participation of" the parties' immediate family members. In addition, plaintiff asked that in the event a plenary hearing was scheduled, the parties continue to follow the February 9, 2016 mediation agreement as to the nanny picking their son up from school and bringing him to defendant's home for shared custody time, with that arrangement continuing during the summer

when he was in camp and when he was neither in camp or school on work days.

In support of the motion, plaintiff submitted her own certification and a certification from the nanny. In her certification, plaintiff alleged that defendant's economic constraints and his then fiancée's "wishes" led to his decision to terminate the nanny. She stated that over a period of six to nine months, she observed her son "becom[e] increasingly distressed and anxious" when he would visit his father at his home, and that he "expressed on countless occasions his feelings that [defendant's fiancée was] 'mean' to him and was 'mean' to [the nanny]." Plaintiff further alleged that her son "feel[s] like an outsider in defendant's home" as "he is not allowed to hold" his baby brother, and defendant's fiancée "has never attended a school or extracurricular event" in support of him.

Plaintiff also asserted that the provision in the PSA regarding the "[j]ointly engaged and agreed-upon private nanny" clearly contemplates that the parties retain a shared nanny, as she only agreed to equal parenting time because the current nanny would fulfill that role. She also stated that if the nanny decided to discontinue her role, "there would be another suitable jointly engaged and agreed-upon nanny to address [her] concerns regarding care for [her son] during defendant's parenting time." In

addition, plaintiff alleged that defendant suddenly refused to directly communicate with her about matters concerning their son, which rendered "the equal timesharing no longer viable." Specifically, she stated that defendant would relay "messages or requests" through their son or the nanny, and that "[d]uring the . . . school semester, [d]efendant . . . insisted that all of [their son's] extracurricular activities occur on [plaintiff's] parenting days" so that he could spend more time with the son on his parenting days.

Finally, plaintiff asserted that "in reality [she] serve[s] as [their son's] primary caregiver." Plaintiff stated that she arranges his medical appointments and maintains the proper documentation, monitors and assists the nanny with their son's assignments and school projects, and she is involved with his school activities as she "was selected to serve on the [school's] Finance Committee."

According to the nanny's certification, defendant "[did] little to nothing with [their son] on school work, extra educational activities, piano practicing, etc.[,]" he was "difficult to communicate with," and he refused to get involved when any tensions arose between the nanny and defendant's fiancée. The nanny also stated that she was concerned "about [defendant's fiancée's] extreme moodiness and tendency to quickly explode with

anger over small things[,] and that [the son] was afraid and . . . saying disturbing things to [her] like he wanted to 'kill' [defendant's fiancée]."

In response, defendant filed opposition and a cross-motion, in which he asserted, among other contentions, that plaintiff did not establish a prima facie claim of changed circumstances and claimed plaintiff violated the agreement reached through mediation. He sought to enforce the CPP and made a claim for counsel fees.

Plaintiff submitted a reply certification that attached two of the son's writings, which stated: 1) "Dad is stupid. Mom is nice. Trtle is fun. Heli is a fakin idie;"[1] and 2) "Run a way," accompanied by a sad face.

On April 29, 2016, Judge Michael R. Casale entered an order requiring the parties to participate in another mediation and scheduled an interview with the child. The judge requested the interview because of the concern he had about the family's "new dynamics" and whether it was affecting the son. Neither party made any requests to attend the interview nor did they submit any questions for the judge to ask the child.

---

[1] "Trtle" refers to plaintiff's husband and "Heli" refers to defendant's fiancée.

On May 10, 2016, the judge conducted the in camera interview and in his ensuing letter to the parties' attorneys he summarized his findings.[2] The letter stated, in part, the following:

> I found [the boy] to be an adorable kid — articulate, soft-spoken and shy. He appeared to be well-adjusted and gave direct responses to my questions.
>
> According to [the child], he has a good relationship with [defendant's fiancée and plaintiff's husband] and obviously [the nanny]. She helps him with his homework, as does his dad. He states that on a typical day with his dad [defendant's fiancée] cooks breakfast, he plays video games and sports with his dad, but only after dad helps him with homework.
>
> [The boy] describes his mom as "nice," and he enjoys spending time with her. She does not help him much with homework, and does not really cook much, as that is done by [her husband and the nanny].
>
> I asked him about his drawing . . . . He stated that he was mad at his dad and [defendant's fiancée] at the time and seemed to regret it. He is not mad[] at them anymore.

Following a conference with the parties' counsel,[3] Judge Casale issued a supplemental order on May 31, 2016, that continued the shared custody arrangement set forth in the parties' earlier

---

[2] On May 25, 2016, the judge entered an order authorizing the parties to have limited access to the interview transcript.

[3] There is nothing in the record to indicate that, after the interview and the release of the transcript, either party requested additional oral argument on the parties' motions.

mediation agreement.  In the order, the judge stated his findings.

As to his observations about the child, the judge stated:

> The [c]ourt finds that [the child] is doing well under the current parenting time and custody arrangement, which has only been in existence since July 14, 2014.  [He] appears to be a well-adjusted child, who loves both parents, and enjoys spending time in both households on an equal basis.

As to the nanny, the judge concluded that there was no reason to alter the parties' mediation agreement regarding her services.

He observed the following:

> [The nanny] has actually served as [the child's] [PPR] spending more time with him than Plaintiff or Defendant.  [The child] is very much attached to [the nanny].  If the Court were to replace her, it would be detrimental to [the child's] best interests.  Thus, [the nanny] shall not be replaced as [the child's] nanny by Defendant.  However, if Defendant wishes to spend more time with [his son], during time normally spent with [the child] by the nanny, he may do so.  The Court will not force a particular amount of time that the nanny must spend with [the child].  The Court recognizes that [the nanny] should not have thrust herself into this dispute with her certification.  Defendant shall have to deal with that as it is in [the child's] best interests to retain her as his nanny[.]

Addressing the issue of therapy, the judge concluded it was unnecessary.  He explained the child

> appears to be a well-adjusted seven year old boy who performs well in school.  While he was quiet in this interview with the Court, he

9

answered questions in a concise and articulate manner. He enjoys sports with Defendant and his friends. There is no recommendation for counseling by the school authorities. While the family may consider counseling for the entire family, the Court will not mandate it at this time.

Based on his findings, the judge denied plaintiff's motion, concluding that plaintiff "failed to make a prima facie case of changed circumstances affecting the best interests of the parties' child." However, he granted plaintiff's motion to maintain the nanny's employment and have the parties pay her salary in the same percentages "as they exist at the present time." The order limited the obligation to continue to use the nanny. It stated: "The parties shall continue with the interim agreement reached at mediation on February 9, 2016[,] as to [the nanny's] services and same shall continue through the summer school recess."

The judge's order also: 1) granted defendant's application to enforce the CPP in the PSA, and compelled the parties "to cooperate with the child's bonding and relationships in both homes"; 2) denied plaintiff's request to send the child to therapy; 3) ordered the parties to refrain from "disparaging each other to the child, and [to] not interfere with the relationship" of each other's spouses; and 4) denied the parties' requests for counsel fees.

Defendant filed a motion for reconsideration, seeking an order: 1) terminating the nanny's services "during the [d]efendant's parenting time[,]" or in the alternative, confirming that her services will end "at the conclusion of [the child's] summer school recess;" 2) "enforcing . . . the May 31, 2016 . . . Order by directing the [p]laintiff to pay [the nanny's] compensation"; 3) sanctioning plaintiff for violating the PSA "incorporating by reference the [CPP]"; and 4) compelling plaintiff "to pay [d]efendant's counsel fees and costs" associated with the application. In his certification, defendant explained that he "was not asking the [c]ourt to replace [the nanny] on [p]laintiff's parenting days[,]" rather he no longer required her services as she only spent two hours, two to three days a week, with the child after school on his days. Moreover, in February 2016, defendant hired a new nanny, who "ha[d] been [the child's] primary nanny on [his] parenting days."

Plaintiff filed another cross-motion seeking to again modify the parties' shared custody arrangement, or in the alternative "schedule[e] a plenary hearing." In addition, plaintiff requested: 1) to keep the nanny as the child's "jointly-engaged nanny on both parties' weekday parenting days"; 2) to compel defendant to take responsibility for his percentage of compensation for the nanny's services and reimburse plaintiff for

his share since the May 31, 2016 order; 3) to reverse the court's decision on therapy for the child; 4) to restrain defendant from speaking to the child about the proceedings; 5) to hold defendant in violation of "the interim agreement reached in mediation" in February; and 6) to instruct defendant to pay counsel fees.

In plaintiff's certification, she stated that the court should reconsider her application as it relied "on [her son's] [i]nterview as the sole basis for denial[,]" and the interview "was largely superficial, [since] responses by [the child] were generally 'yes' or 'no.'" Moreover, leading up to the interview, plaintiff alleged that her son told her that defendant "confronted him [about his writings] and that he had 'gotten in trouble' with [d]efendant and [his fiancée]." Plaintiff also provided new information that her son revealed to her "[t]hat [h]e '[l]ied to the [j]udge,'" and additional information about "[d]efendant's [c]ontinued . . . [p]attern of [b]ullying and [i]ntimidation" of their son.

Judge Lisa M. Adubato considered the motions and the parties' oral arguments on September 2, 2016.[4] Following oral argument, she placed her decision on the record and issued an order denying the parties' motions. The judge ordered, however, defendant would

---

[4] By that time Judge Casale had retired from the bench.

no longer be compelled to retain the nanny's services during his shared custody time. She found that the May 31, 2016 order concerning the nanny's joint employment "was a temporary and transitional arrangement." She noted in her oral decision that she did "not have anything in front of [her] that would allow [her] to conclude that if that arrangement did not continue, that [the child] would in any way suffer, or that in any way would be against his best interests." Relying upon the parties' February 9, 2016 mediation agreement, the judge concluded that the nanny would "no longer [be] jointly-engaged." The judge ordered that the arrangement would "expire on September 6, 2016 after which time [d]efendant shall no longer be" required to pay for the nanny's services. Additionally, the judge referenced the parties' PSA and directed that "each parent shall make decisions regarding the day-to-day care and control of the child while the child is with that parent." This appeal followed.

On appeal, plaintiff argues that she established a change in circumstances warranting a change in custody through her and her nanny's certifications about her son becoming "increasingly distressed" whenever he would have to go over to defendant's house. Plaintiff also contends that she provided ample evidence through emails that the parties exchanged that "demonstrated . . . defendant failed to communicate and cooperate with plaintiff as a

co-parent." Plaintiff avers that defendant violated their agreements when he unilaterally decided to terminate the nanny's services.

Plaintiff also contends that Judge Casale recognized she established changed circumstances because he "conduct[ed] the [i]nterview and . . . refer[red] the parties to mediation" instead of denying their motions "outright." Relying on Pacifico v. Pacifico, 190 N.J. 258, 267 (2007), plaintiff argues that, minimally, the judge should have ordered a plenary hearing accompanied by evaluations from mental health professionals "given the [parties'] conflicting certifications regarding the welfare of" their son.

Citing to Rule 5:8-6, plaintiff also challenges the manner in which the court conducted her son's interview. She argues that it was done "contrary to the Rule's requirements, [as her] counsel was never given an opportunity to submit questions to the court for use during" her son's interview. Ibid. Relying on Callen v. Gill, 7 N.J. 312, 319 (1951), plaintiff avers that the judge should have also given her an "opportunity to be heard following the interview" before entering his May 31, 2016 order. Moreover, plaintiff alleges that "[t]he parties did not receive a transcript of the [interview] recording until June 7, 2016, which was after" the judge issued his May 31, 2016 decision denying her motion.

14                                                    A-0318-16T2

Our review of a Family Part judge's determination in custody and parenting time matters is limited. "Family Part judges are frequently called upon to make difficult and sensitive decisions regarding the safety and well-being of children." Hand v. Hand, 391 N.J. Super. 102, 111 (App. Div. 2007). "[B]ecause of the family courts' special jurisdiction and expertise in family matters, [we] accord deference to family court factfinding." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010). Our narrow review is based upon that fact "we have 'invest[ed] the family court with broad discretion because of its specialized knowledge and experience in matters involving parental relationships and the best interests of children.'" N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 365 (2017) (quoting N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 427 (2012)). "[W]e defer to family part judges 'unless they are so wide of the mark that our intervention is required to avert an injustice.'" Ibid. (quoting F.M., 211 N.J. at 427). However, "[w]e owe no special deference to the trial judge's legal determinations." Slawinski v. Nicholas, 448 N.J. Super. 25, 32 (App. Div. 2016). "Notwithstanding our general deference to Family Part decisions, we are compelled to reverse when the court does not apply the governing legal standards." Ibid. (citation omitted).

Applying this deferential standard, we conclude plaintiff's arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed by both Judge Casale and Judge Adubato in their written and oral decisions. Suffice it to say, Judge Casale correctly determined that based on the information submitted and his interview with the child, there was no showing of any changed circumstances that warranted a change in the parties shared custody arrangement in the best interests of the child. Moreover, we find no fault in his thoughtful and sensitive interview of the child, as it was a vehicle to quickly address any immediate concerns he had about the child's well-being. Similarly, Judge Adubato properly determined that, consistent with the parties' agreement and Judge Casale's earlier order denying plaintiff's motion for a modification, there was no reason to compel defendant to continue to employ the nanny during his scheduled shared custody time.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16                                                                A-0318-16T2