**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0213-16T2

JAMES SCOTT,

     Plaintiff-Appellant,

v.

LEILA SCOTT,

     Defendant-Respondent.

_____

Submitted June 19, 2018 – Decided  October 29, 2018

Before Judges Nugent and Accurso.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-0751-16.

James Scott, appellant pro se.

Leila Scott, respondent pro se.

PER CURIAM

Plaintiff, James Scott, appeals from the parties' final judgment of divorce (FJOD). He also appeals from an order entered the following month denying

him this relief: modification of his spousal support obligation; a change of venue; an order compelling his older daughter to resume visitation with him; and an order nullifying the bar against his girlfriend having contact with the parties' children during his parenting time. Defendant, Leila Scott, opposes the appeal. For the reasons that follow, we affirm the FJOD as well as the subsequent order.

The parties married in July 2008 and were divorced from bed and board in June 2016. They have two daughters, neither of whom is emancipated.

On June 17, 2016, the parties appeared before the court. The court announced the "matter had been scheduled to be put through as a judgment of divorce from bed and board pursuant to N.J.S.A. 2A:34-3." The court stated its understanding that all issues had been resolved, although neither party "got what they wanted." Rather, the parties compromised.

Plaintiff's counsel informed the court he had drafted "the potential judgment of divorce from bed and board," and though he had hoped it was "something that everyone could live with," plaintiff still had "a couple of issues that he was still unhappy with." Plaintiff was seeking "either a small accommodation with the alimony and/or a small accommodation" concerning parenting time. The court responded: "this is what I am going to tell you, and you've heard what I told you in chambers . . . and I am sure you shared them

with your client.  Next - - it's just a trial and I will tell you at trial I don't know if the number will be the same.  That's all I am going to tell you."  The court attempted to continue, but the attorney interrupted: "Yeah, let a word to the wise be sufficient, as it were."  The court responded, "yeah, and then we're talking about, you know, assessing the counsel fees because I know where you're at at this point."

The court refused to vacate a prohibition against plaintiff's girlfriend being present during his parenting time.  The court said it would not reconsider the prohibition until plaintiff was prepared to marry his girlfriend, but also said it would rely upon the recommendation of "the therapist."

During a recess, the parties apparently revised and approved the draft Judgment of Divorce from Bed and Board.  When the parties returned to the courtroom, each party, under oath, in response to questions from each attorney, acknowledged voluntarily agreeing to the terms set forth in the judgment. Significantly, plaintiff acknowledged the document reflected his understanding of the terms and agreements binding upon the parties in the future.  Plaintiff also said he understood that neither party got everything he or she was looking for but the agreement they signed was one they both could live with.  The court entered the judgment the same day.

 A-0213-16T2

Two months later, the parties returned to "convert" the Judgment of Divorce from Bed and Board to a FJOD. The FJOD was entered that day. During the proceeding, plaintiff testified the FJOD represented his understanding of the parties' mutual obligations. Plaintiff also acknowledged that during the negotiations of the FJOD's terms, he had to give some, and . . . had to get some," but "[a]t the end of the day, [he was] willing to be found [sic]" by the FJOD. Defendant stated specifically, "I didn't get anything but, yeah, I'm bound by the document."

The FJOD provided, among other things, that plaintiff was to pay alimony to defendant at the rate of $340 weekly for a period of four years. Plaintiff's parenting time with the children was every other weekend from 5:00 p.m. Friday until 5:00 Sunday, and on alternating weeks, Wednesday evening dinner. The Wednesday parenting time changed slightly during summer months. The FJOD also provided for summer and holiday parenting time. The FJOD precluded plaintiff's girlfriend from having any contact with the children during plaintiff's parenting time absent further court order.

The FJOD also memorialized the court's finding that both parties had voluntarily entered into the agreement reflected in the FJOD and accepted the terms thereof as fair, reasonable, and equitable. The FJOD provided for child support, a matter not at issue on this appeal.

4

The FJOD was entered on August 1, 2016. A month later, on September 2, plaintiff filed a motion seeking a reduction in spousal support, a change of venue, an order requiring the parties' older daughter to resume visitation with plaintiff because the daughter had refused to do so, and an order vacating the prohibition against plaintiff's girlfriend having any contact with the children.

The court denied the motion. The court determined plaintiff had not demonstrated a significant change in circumstances warranting a modification of spousal support. The court found no basis for changing venue. The court rejected plaintiff's argument that he had been treated unfairly. Concerning visiting time with plaintiff's older daughter, the court noted the daughter was "refusing to go on visits with [p]laintiff." The court declined to force the daughter to do so, but granted defendant's request that the daughter continue counselling as required by the FJOD. The court directed the parties to follow all recommendations of the child's therapist. Last, the court denied plaintiff's application to have the court vacate the prohibition against his girlfriend having contact with the children.

On appeal, plaintiff claims he never agreed to the terms of the divorce, "especially the Visitation, Alimony, Past Debts Owed," and the provision concerning his girlfriend. He claims the trial judge told his lawyer "off the

record" to let plaintiff know that if plaintiff went to trial the judge would make him pay his wife's attorney's fees.

Plaintiff asks that we revise the custody order in many ways. He asks for more visitation with his daughters, including resumption of visitation with his older daughter. He also asks that the bar against his girlfriend having contact with his children be lifted. Last, he asks that we enforce the terms of the FJOD permitting him to speak to his children on holidays.

Plaintiff also contends he cannot afford the alimony and is thus "[l]ooking for a review of Alimony." Next, plaintiff argues that the allocation between him and defendant for responsibility for certain debts be changed to terms more favorable to him. Last, plaintiff asks that his matter be returned to another judge for trial.

It is important for the parties to understand the limited scope of our review of the trial court's orders. We do not conduct a de novo review, that is, we do not begin anew and revisit each and every term of the parties' agreement. When conducting our review of trial court orders, we give considerable deference to the discretionary decisions of Family Part judges. Donnelly v. Donnelly, 405 N.J. Super. 117, 127 (App. Div. 2009) (quoting Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006)). This is so because the Family Part judge is familiar with the case, has had an opportunity to make credibility judgments based on live testimony, and

has expertise in family matters. <u>See</u> <u>Cesare v. Cesare</u>, 154 N.J. 394, 411–13 (1998). We will not interfere with a family court's decision that is supported by "adequate, substantial, credible evidence." <u>Id.</u> at 412.

The issues in the case before us involve a marital agreement. Marital agreements are contractual by nature. <u>See</u> <u>Massar v. Massar</u>, 279 N.J. Super. 89, 93 (App. Div. 1995). As is the case with other contracts, our courts value the settlement of family disputes, particularly in view of "the interpersonal strife and myriad factual issues that complicate judicial resolution" of such matters. <u>Slawinski v. Nicholas</u>, 448 N.J. Super. 25, 32 (App. Div. 2016). For that reason, as with any other contract, we will generally enforce marital agreements absent fraud or unconscionability. <u>Ibid.</u> (citing <u>Pacifico v. Pacifico</u>, 190 N.J. 258, 266 (2007). Here, the record does not demonstrate the elements of fraud or unconscionability. To the contrary, the record demonstrates plaintiff voluntarily entered into terms incorporated into the FJOD. Although he would have preferred a better result, he attested that he could live with the settlement terms.

During the proceeding resulting in the judgment of divorce from bed and board, plaintiff acknowledged that he had voluntarily entered into the terms set forth in the judgment. He also acknowledged the judgment reflected his understanding of the terms and agreements that would bind the parties in the future. Additionally, he said under oath that he understood neither party got

A-0213-16T2

everything they were looking for, but the agreement they signed was one they could both live with. Two months later, during the proceeding resulting in the FJOD, plaintiff again testified under oath the terms of the FJOD represented his understanding of the parties' mutual obligations. He affirmed that "[a]t the end of the day," he was willing to be bound by the terms of the FJOD.

Plaintiff contends he was coerced into signing the agreement by the trial court's "off-the-record" discussion with his attorney. According to plaintiff, the trial judge threatened to assess counsel fees against him if he did not agree to the terms of the divorce. Although there is some evidence to support plaintiff's argument, namely, the court's comment on the record to plaintiff's attorney about their in-chambers discussion concerning counsel fees, plaintiff did not raise the issue at that time. By failing to raise the issue before the trial court, he has not properly preserved it for appeal. Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973) (citing Reynolds Offset Co., Inc. v. Somer, 58 N.J. Super. 542, 548 (App. Div. 1959) (explaining the "well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest'")).

Having voluntarily entered into a marital settlement agreement that was not unconscionable, plaintiff had the right to ask for a modification of its terms upon a change of circumstances. "A 'trial court has the discretion to modify the agreement upon a showing of changed circumstances.'" Quinn, 225 N.J. at 49 (citing Berkowitz v. Berkowitz, 55 N.J. 564, 569 (1970)). In Quinn, the court explained that "[c]hanged circumstances include 'an increase in the cost of living, an increase or decrease in the income of the supporting or supported spouse, cohabitation of the dependent spouse, illness or disability arising after the entry of the judgment, and changes in federal tax law.'" Ibid. (citing J.B. v. W.B., 215 N.J. 305, 327 (2013)).

Here, the month after the divorce, when the court denied plaintiff's motion seeking a reduction in spousal support and other relief, the court determined plaintiff had not "provide[d] proof of any significant change in circumstances to warrant a modification." The trial court's finding is amply supported by the record. Absent such a change in circumstances, the trial court did not err by denying the relief.

We have considered plaintiff's remaining arguments and found them to be without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0213-16T2