# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0796-21

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

L.J.,

      Defendant-Appellant,

and

A.Q.T. and A.L.Q.,

      Defendants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF
A.L.Q., JR. and Z.S.J., minors.

_____

Submitted September 29, 2022 – Decided October 19, 2022

Before Judges Sumners and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FG-11-0002-20.

Joseph E. Krakora, Public Defender, attorney for appellant (Patricia Nichols, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Acting Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; John J. Lafferty, IV, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant L.J. (Lynn)[1] appeals from the trial court's October 27, 2021 order terminating her parental rights to A.L.Q. Jr. (Asa), who was born on November 6, 2013, and Z.S.J. (Zelda), who was born on November 4, 2014. Lynn argues the trial court erred in finding plaintiff New Jersey Division of Child Protection And Permanency (Division) proved the four prongs of N.J.S.A. 30:4C15.1(a) (Title 30) because it: 1) improperly considered evidence about defendant's marijuana usage in light of recent decriminalization statutes; 2)

---

[1] We use initials and pseudonyms to protect the privacy of individuals and the records of this proceeding. R. 1:38-3(d)(12).

failed to consider and properly apply amendments to the kinship legal guardianship statute; 3) inappropriately considered embedded hearsay evidence; and 4) improperly bifurcated the trial. Lynn also argues the accrual of these errors, and the failure of trial counsel to identify and object to them at trial, constitute ineffective assistance of counsel warranting a new trial.

We conclude there exists clear and convincing admissible evidence in the record on which the trial judge found the Division proved all four prongs of Title 30 and affirm substantially for the reasons set forth by Judge Thomas J. Walls, Jr. in his well-reasoned and thorough 140-page opinion. We will not recite in detail the history of the Division's interactions with Lynn. Instead, we incorporate by reference the factual findings and legal conclusions contained in Judge Walls, Jr.'s decision. We add the following comments.

A trial court's decision to terminate parental rights is subject to limited appellate review. N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007). Indeed, we have "invest[ed] the family court with broad discretion because of its specialized knowledge and experience in matters involving parental relationships and the best interests of children." N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 365 (2017) (alteration in original) (quoting N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 427 (2012)).

3

Where a family court relies upon evidence adduced at a hearing, we "defer to the factual findings . . . because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 293 (2007)). We defer to family courts "unless they are so 'wide of the mark' that our intervention is necessary to correct an injustice." F.M., 211 N.J. at 427 (quoting E.P., 196 N.J. at 104). Therefore, the family court's decision to terminate parental rights will not be disturbed "when there is substantial credible evidence in the record to support the court's findings." E.P., 196 N.J. at 104. We will not second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support the decision to terminate parental rights. Ibid.

Nonetheless, appellate courts "owe no special deference to the trial [court's] legal determinations." Slawinski v. Nicholas, 448 N.J. Super. 25, 32 (App. Div. 2016). For issues raised for the first time on appeal, the plain error rule applies. Rule 2:10-2 provides "[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable

of producing an unjust result . . . ."  "The mere possibility of an unjust result is not enough."  State v. Funderburg, 225 N.J. 66, 79 (2016).  The plain error standard requires a determination of "(1) whether there was error; and (2) whether that error was 'clearly capable of producing an unjust result,' R. 2:10-2; that is whether there is 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached."  State v. Dunbrack, 245 N.J. 531, 544 (2021) (quoting Funderburg, 225 N.J. at 79).

Lynn argues the recent statute decriminalizing marijuana[2] and subsequent recent case law prohibit the Division from inferring a parent is unfit or incapable to address a child's needs from a positive marijuana test.  She further argues her marijuana usage was the sole evidentiary pillar of the Division's case against her, and as such, was unlawful.

After the enactment of the CREAMM Act, we have most recently held "that a parent's status as a recreational marijuana user cannot suffice as the sole or primary reason to terminate that parent's rights under Title 30, unless the Division proves with competent, case-specific evidence that the marijuana usage endangers the child or children."  N.J. Div. of Child Prot. & Permanency v. D.H.,

---

[2]  Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization ("CREAMM") Act; N.J.S.A. 24:61-31 to -56.

469 N.J. Super. 107, 113, 134 (App. Div. 2021) (holding trial court had substantial credible evidence to conclude the Division established all four prongs of the Title 30 termination criteria).  In D.H., we advocated a case-specific and non-categorical approach to the law, and the Division must still "demonstrate, by the clear and convincing evidence required under Title 30, that the parent's usage poses a risk of harm to the child to a degree that satisfies the first and second prongs of the termination criteria."  D.H., 469 N.J. Super. at 133.  As with parents who abuse alcohol, which is also legal for recreation use, termination of parental rights may be appropriate in cases where parents abuse marijuana to the extent it poses a substantial risk of harm to the child.  Id. at 132.

Critically, Lynn's history of marijuana usage, which predated the decriminalization of certain uses of recreational marijuana, was not the sole basis of the Division's ongoing involvement with the family, nor was it the basis for the second removal of the children resulting in termination.  Although the Division first became involved when Lynn and Asa both tested positive for marijuana in 2013, Lynn tested positive for other substances, including cocaine and oxycodone in 2015, all prior to a brief reunification with the children in April 2018.  In October 2018, she tested positive for barbiturates and admitted

to taking unprescribed medication. The children were removed from her a second time due to housing instability, leaving the children unattended, and her on-going use of illicit substances, not solely her use of marijuana. Because Lynn's history of housing instability and leaving the children unattended, in concert with her illicit drug use, threatened the safety, health, and development of Asa and Zelda, Judge Walls found these problems would persist and the first two prongs of Title 30 were met.

Lynn argues the court erred by considering testimony regarding the Kings' preference for adoption because of changes to portions of prong two in Title 30, N.J.S.A. 30:4C-15.1(a)(2), and the kinship legal guardian (KLG) statute, N.J.S.A. 3B:12A-1 to -7. She argues there is now "no place for consideration of a foster caregiver's connection to a child in guardianship decision-making." She adds because the legislature removed qualifying language in the KLG statute, which required consideration of KLG when "adoption of the child [was] neither feasible nor likely," the new legislation mandates KLG instead of adoption in order to "ensure uniform judicial decision making" with respect prongs two, three, and four of Title 30.[3]

---

[3] Specifically, she argues "the legislature's intent, to exclude from consideration harm from removal from a foster caregiver extended beyond simply modifying

A-0796-21

Lynn's interpretation of the amendments is based on the Legislature eliminating language in Title 30 at N.J.S.A. 30:4C-15.1(a)(2) on July 2, 2021.[4] The Legislature removed from the court's consideration "[s]uch harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child." Compare L. 2015, c. 82, §3 with L. 2021, c. 154, §9. The Legislature also removed language from the KLG statute at N.J.S.A. 3B:12A-6(d)(3) requiring the court consider KLG as an option only when "adoption of the child is neither feasible nor likely." Compare L. 2006, c. 47, §32 with L. 2021, c. 154, §4.

Lynn's interpretation of the legislative amendments is overbroad. Removing the KLG Act's requirement that a court find adoption "neither likely nor feasible" before granting KLG is a factor in a determination as to whether KLG is an appropriate permanency option but has no place in a termination of parental rights trial. The amendment to the KLG statute now ensures that a resource parent's willingness to adopt no longer forecloses KLG. Evidence that establishes a resource parent's clear and informed preference for adoption

_____

the language of prong two . . . the legislature required treating KLG as a viable permanency option, eliminating qualifying language that did so 'only when adoption is neither feasible nor likely.'"

[4] The amendments to the KLG statute explicitly became effective the same day.

remains relevant pursuant to Title 30 to a trial court's finding that there are no alternatives to termination and termination will not do more harm than good. Even prior to termination, a trial court in a Title 30 case was required to find the Division had explored alternatives to termination. The change in the KLG statute reflects a codification to a requirement that existed in prior caselaw. See, e.g., N.J. Div. of Child Prot. & Permanency v. M.M., 459 N.J. Super. 246, 251-52, 265 (App. Div. 2019) (remanding for findings on resource caregiver's preference, if any, of KLG versus adoption as relevant, but not dispositive considerations).

The KLG amendment did not affect N.J.S.A. 30:4C-15.1(a)(2)-(4), which still requires the court to consider "the delay of permanent placement will add to the harm . . . alternatives to termination of parental rights . . . and termination of parental rights will not do more harm than good."

KLG in this case was not feasible because the Kings, who are not intrafamily resource parents, expressed unambiguously they do not want to participate in KLG. Because the best interest analysis in the KLG statute, used to determine whether KLG is an appropriate permanency plan for a child, is separate and distinct from the best interest test articulated in Title 30, the considerations of permanency, alternatives to termination, and more harm than

good factors must still be considered pursuant to the unchanged plain text of N.J.S.A. 30:4C-15.1(a)(2)-(4). The only amendment to Title 30 occurred to prong two, which no longer requires the court weigh the potential harm caused to a bond between the child and their resource parent in its determination of whether delay of permanent placement will add to the harm facing the child.

The KLG amendment does not negate the separate considerations articulated in prongs two, three, and four, requiring the Division prove delay of permanent placement will add to the harm, the Division explored alternatives to termination, and termination of parental rights will not do more harm than good. N.J.S.A. 30:4C-15.1(a)(2) - to 15.1(a)(4).

Lynn further argues the trial court's ordering of the witnesses, and reference to portions of one witness' testimony in its opinion regarding Lynn constituted impermissible joinder [sic] because the trial judge had severed the trial by limiting testimony on the first day of trial with respect to only Art's parental rights, the only day that witness testified.

There was no bifurcation of trial, as noted specifically on the record and the absence of an order bifurcating trial. Instead, Judge Walls correctly exercised his discretion in the ordering of witness testimony. See N.J.R.E. 611 affording a trial judge broad discretion in the manner witnesses testify. See

Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 611(a) (2022) ("Under N.J.R.E. 611 the trial court is given broad discretion to 'exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence' to effectuate the purposes set forth in the rule, i.e. ascertaining truth, using time effectively and avoiding embarrassment of witnesses.").

Defendant and her counsel were present and had the opportunity to cross-examine every witness. Judge Walls referenced this one witness' testimony briefly with respect to prongs one and two of Title 30 but used this testimony in tandem with other substantial credible evidence in the record regarding Lynn's history of substance abuse, housing instability, and noncompliance with services to find the Division met its burden. The facts testified to by the witness were part of the Division's record and testified to by other witnesses, including the Division caseworkers. For example, the fact that Zelda suffers from sickle cell anemia is readily discernible from the undisputed record.

Lynn also challenges the trial court's admission and use of certain evidence. Lynn argues the trial court considered embedded hearsay and challenges the omission of certain documents admitted into evidence but not explicitly referenced in the opinion and documents used to refresh witness

11

recollection, arguing they were improperly considered as admitted evidence. She does not demonstrate how alleged references to hearsay led to an unjust result by undermining the otherwise undisputed record. "[W]hen objectionable hearsay is admitted in a bench trial without objection" there exists a presumption "the fact-finder appreciated[d] the potential weakness of such proofs, and takes that into account in weighing the evidence." N.J. Div. of Child Prot. & Permanency v. J.D., 447 N.J. Super. 337, 349 (App. Div. 2016). Further, a trial court is given "considerable latitude" in admitting or excluding evidence, and reversal is warranted only if "manifest denial of justice resulted." N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 492 (App. Div. 2016).

Finally, Lynn argues her trial counsel was ineffective because it failed to apprise the court of the changes in the law, specifically related to the CREAMM Act and the KLG statute. Counsel's failure to advance an interpretation of the law does not satisfy an ineffective assistance of counsel claim, particularly where the interpretation is premised on a flawed interpretation. The failure to raise a different argument which lacks support in law will not satisfy the standard. See State v. Echols, 199 N.J. 344, 360-61 (2009) (holding trial counsel was not ineffective for failing to raise a losing argument.).

A-0796-21

Judge Walls specifically acknowledged the change in the guardianship statute, which occurred during trial, in his opinion and found the Division discussed KLG with the Kings, who nonetheless expressed a clear desire for adoption. This argument does not merit further consideration pursuant to Rule 2:11-3(e)(1)(E).

In sum, although the CREAMM Act decriminalized possession of marijuana and certain usage, clear and convincing evidence of Lynn's abuse of other illicit substances was presented at trial. Judge Walls did not commit reversible error considering testimony regarding kinship legal guardianship because consideration of that testimony was relevant and mandated by the second, third, and fourth prongs of Title 30. Further, the record reflects no order bifurcating the trial; instead, it demonstrates the court heard witness testimony to accommodate the schedules of counsel and the parties. Finally, Lynn's trial counsel was not ineffective, and she fails to articulate how failure to object to certain evidence sufficiently prejudiced her to warrant a remand and new trial.

We believe Lynn's desire to parent her children is sincere. However, the overarching question in a Title 30 best interest analysis is "whether the parent can become fit in time to meet the needs of the children." N.J. Div. of Youth & Fam. Servs. v. F.M., 375 N.J. Super. 235, 263 (App. Div. 2005); see also N.J.

A-0796-21

<u>Div. of Youth & Fam. Servs. v. P.P.</u>, 180 N.J. 494, 512 (2004) (indicating that even if a parent is trying to change, a child cannot wait indefinitely). After carefully considering the evidence, Judge Walls reasonably determined Lynn is unable to parent the children and will not be able to for the foreseeable future. Under these circumstances, we agree with the judge that any further delay of permanent placement would not be in the children's best interests.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0796-21