**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2473-21

MICHAEL P. DUFFY, JR.,

    Plaintiff-Appellant,

v.

AMY T. DUFFY,

    Defendant-Respondent.

_____

Submitted November 13, 2023 – Decided November 28, 2023

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FM-08-0718-17.

Smedley Law Group, Inc., attorneys for appellant (Allyn Marie Smedley, on the briefs).

Cockerill, Craig & Moore, LLC, attorneys for respondent (Christine Casullo Cockerill, on the brief).

PER CURIAM

Plaintiff Michael Duffy, Jr. appeals from a March 3, 2022 order adjudicating post-judgment motions for modification and enforcement of a marital settlement agreement (MSA) he entered with defendant Amy Duffy. We affirm in part and remand in part for the reasons expressed in this opinion.

The parties were married less than eight years when they negotiated and entered the MSA in March 2018. Two children were born of the marriage, who were eleven and eight years old when the trial court heard the post-judgment motions leading to this appeal.

Pursuant to the MSA, plaintiff agreed to pay defendant $400 per week in limited duration alimony for a period of three years. The MSA stated the alimony "payment is based upon [plaintiff's] annual income of $114,000[] and [defendant's] annual income of $60,000[] . . . ($25,000[] imputed earnings; approximately $10,000[] per year in unearned income from annuity/investments and approximately [$]25,000[] in interest earnings)."

The parties agreed to joint legal custody of the children. Defendant would continue to be the parent of primary residence, and they designated plaintiff the parent of alternate residence. Plaintiff's parenting time was on alternating weekends from Friday afternoon until Monday morning, and every Thursday afternoon until Friday morning. The weekly overnight was selected not to

conflict with the children's cheer and gymnastics practice schedules.[1] The parties agreed they would each ensure the children completed their homework and projects and attend their extracurricular activities during their respective parenting times. The MSA further reflected their agreement to "consult with each other regarding major issues affecting the children's health, education and general welfare with a view to adopting a harmonious policy." Each party had "full, free and unhampered access to the children's health, educational and extracurricular records, documentation and schedules."

Child support was set at seventy-six dollars per week, pursuant to the child support guidelines. Although the MSA's child support provision contained no provision regarding either party's income for purposes of the guidelines calculation, it attached a guidelines worksheet that had the same incomes used to calculate alimony. The guidelines also included the alimony amount. The guidelines reflected plaintiff had 56.20% and defendant 43.80% of the total family income, but the parties agreed to share work-related childcare, cheer, and gymnastics expenses equally. If a child ceased to participate in an activity in favor of a new one, the parties agreed to consult with each other regarding the

---

[1] As permitted by the MSA, the parties later agreed to switch the weekly overnight to Tuesdays to comport with the children's practice schedules.

substituted activity and equally share its costs. They agreed not to unreasonably withhold consent to a child's activity of interest.

The parties agreed to share the unreimbursed medical expenses greater than $250 per year, in accordance with their fifty-six/forty-four percent share of the total family income under the guidelines. Plaintiff would pay his share of the expenses within fourteen days of receiving proof from defendant. If a party unilaterally incurred a non-emergent out-of-network medical expense on behalf of a child, that party would be responsible for bearing the total expense.

The MSA reflected the former marital residence belonged to defendant, because it was owned by her parents and defendant was receiving it as a part of her inheritance. Additionally, defendant received the following assets as an inheritance from her parents: two TD Ameritrade IRAs; Prudential stock; Parke Bank stock; Bank of America stock; series EE bonds; and series I bonds.

Plaintiff filed his post-judgment motion in February 2022. He requested the court: order defendant to submit financial information so that child support could be recalculated; increase his parenting time by an overnight; modify the MSA to permit drop off at home when an adult is present; prohibit defendant from unilaterally enrolling the children in activities; require defendant to confer with plaintiff about childcare plans and provide proof of need for childcare;

A-2473-21

order defendant to bear the cost of childcare because she unilaterally enrolled the children in it; require defendant to provide proof of the medical bills she sought reimbursement for; order defendant to provide plaintiff with the children's medical bills no later than thirty days after the bill is incurred; recalculate the parties' share of the children's medical bills; require defendant to notify plaintiff prior to obtaining non-emergency medical care for the children and sanction defendant when she does not; order defendant to adhere to the Children's Bill of Rights; and grant plaintiff counsel fees.

Plaintiff certified the termination of alimony constituted a change in circumstances warranting a modification of child support. He asserted defendant inherited nearly $1 million dollars in assets from her father in 2016 and "[g]iven the increases in the market since [the] divorce in 2017, it is likely that [d]efendant's interest income has substantially increased above the level she was imputed at the time of [the] divorce." Plaintiff sought discovery regarding defendant's unearned income, including an updated case information statement (CIS), defendant's 2020 tax return, "and proof of all interest income earned in 2020 and year-to-date" to recalculate child support.

Plaintiff claimed there was a substantial change in circumstances requiring a modification of parenting time because he was living "[fifteen-to-

twenty] minutes away from [d]efendant, in a different school district than [the children,]" and had now moved "only eight minutes away from [d]efendant's home." He asserted the parenting schedule in the MSA was because plaintiff's residence at the time "created concerns for [d]efendant regarding school transportation," which were now "eliminated" due to his move. He also alleged the children wanted to spend more time with him.

Plaintiff certified he stopped paying for the children's extracurricular activities because defendant was making unilateral decisions to enroll them in activities without consulting him. He claimed defendant unilaterally incurred childcare expenses, even though both parties were working from home during the pandemic. He requested the court order defendant to confer with him to establish a childcare plan and that he not be required to pay his share of childcare expenses unilaterally incurred by defendant.

Plaintiff argued defendant was unilaterally incurring orthodontia expenses and not including him in decisions regarding the children's medical care. He conceded he did not maintain dental insurance as required by the MSA and was not paying his share of the unreimbursed medical expenses.

6

Plaintiff argued defendant should pay his counsel fees because she refused to resolve the child support issue without a motion. Fees were also warranted for her violations of the MSA.

Defendant filed a cross-motion and opposition to plaintiff's motion. She requested the court deny plaintiff's requests related to childcare and counsel fees. She also requested the court: enforce the MSA by requiring plaintiff to contribute to the cost of the children's activities; interview the younger child and decrease plaintiff's parenting time; recalculate child support and the percentage share of the unreimbursed medical expenses, childcare, and activity costs; require plaintiff to provide a reasonable objection to any proposed activities for the children within a week of defendant scheduling them, or forfeit his opportunity to be consulted; prohibit plaintiff's fiancé from being involved in parental decision-making; and require plaintiff to pay her counsel fees.

Defendant certified plaintiff failed to demonstrate a change of circumstances for modification of parenting time because he moved to his new residence three years prior to filing his motion. His new home was only five minutes closer than the home he was residing in when the parties divorced. Further, he did not reside in the children's school district. Defendant refuted plaintiff's claim he wanted to play a greater role in the children's lives, providing

the court with several examples of his lack of involvement with the children and their activities. She noted he was violating the MSA by not paying for the agreed upon extracurricular expenses.

Defendant certified she returned to work during the pandemic and had to enroll the children in childcare because plaintiff refused to watch them. She explained why the children's medical and orthodontia expenses were necessary and noted plaintiff had taken the children to appointments and scheduled follow-ups for them. She denied withholding the medical expenses from plaintiff, pointing out he had access to his health insurance explanation of benefits.

Defendant's certification attached her CIS dated February 2022, which contained her 2020 tax returns, 2021 W-2s (two), and three recent paystubs. She certified she had not yet filed her 2021 returns. Her CIS and certifications noted she received unearned income of $6,336 per year from her TD IRA and $820 per year in dividends from the Prudential stock. Her W-2 income totaled $34,698.

Defendant requested counsel fees because plaintiff's failure to comply with his obligations caused her to incur fees filing the enforcement motion. She argued plaintiff had the ability to pay fees because he earned more than double her income from all sources.

8

Plaintiff's reply certification disputed defendant's claims regarding the extracurricular and medical expenses. As for parenting time, plaintiff noted he never certified he moved into the school district but had moved "much closer" and was now fifteen minutes closer to defendant. He disputed defendant's claim he wanted to modify parenting time to reduce child support and argued he had sought an additional overnight when the parties were resolving the divorce but settled for less.

Plaintiff attacked the veracity of defendant's income and expenses described in her CIS. He claimed defendant's 2020 return did not disclose her unemployment income. He noted the IRA distribution in the 2020 return was greater than the current distributions in plaintiff's CIS. The distributions had decreased since the divorce and defendant failed to explain why. He claimed the bonds mentioned in the MSA were not listed in the CIS.

The motion judge issued a written tentative decision, which: denied plaintiff's request for financial documentation as moot because defendant provided her CIS and its attachments; increased child support to $180 per week by recalculating it under the guidelines; denied the modification of parenting time because there was no substantial change in circumstances; denied plaintiff's request to allow the children to be dropped off for parenting time as long as an

A-2473-21

adult is home; granted plaintiff's request defendant not unilaterally enroll the children in activities because the parties shared legal custody; granted plaintiff's request that defendant not unilaterally enroll the children in childcare, but denied his request she bear the childcare expenses she had incurred; granted plaintiff's request defendant provide proof of the unreimbursed medical expenses, including those already incurred, and recalculated the parties' share of the expenses in accordance with the guidelines; granted plaintiff's request defendant notify plaintiff of non-emergent medical care for the children, but denied his requests for sanctions; and denied plaintiff's request for counsel fees.

The tentative decision granted all the relief sought in defendant's cross-motions except the following requests: that the judge interview one of the children and modify parenting time; require plaintiff to take the children to all of their extracurricular activities during his parenting time; make the extracurricular and childcare expenses payable on a pro rata basis; modify the extracurricular activities provision of the MSA to give plaintiff a one-week deadline to object to proposed activities selected for the children by defendant; and counsel fees.

Plaintiff disagreed with some of the rulings and the judge granted the parties oral argument. Plaintiff's counsel disputed the request for financial

documentation was moot. She noted the 2017 CIS defendant filed during the divorce disclosed defendant had received "substantial assets" from her father's estate, and her 2022 CIS did not disclose "all of the distributions that she would have received from the assets in 2021." Counsel noted defendant's income did not meet her budget and there was an unexplained gap. Therefore, she argued the court should continue to impute $35,000 in unearned income to defendant for child support purposes.

Counsel argued there was a change in circumstance warranting a modification because: plaintiff lived further away when the parties signed the MSA; the children were older and wanted more parenting time; plaintiff does not see the children for a week under the MSA's parenting schedule; and defendant was alienating the children by discussing the litigation with them and not involving plaintiff in the medical- and activity-related decisions. When the judge inquired how much closer plaintiff was now living to defendant, plaintiff's counsel advised plaintiff was now "within five to eight minutes, and he was [twenty] minutes away before."

Plaintiff's counsel argued the judge should modify his tentative decision to allow plaintiff's fiancé to pick up the children in the event plaintiff or his mother were unavailable. Counsel noted defendant was in a similar position as

she too was engaged and had her fiancé and plaintiff's sister listed as authorized persons for pickups at the daycare.

Defendant's counsel argued the parties never agreed to base child support on the imputed income figures used to calculate alimony. She noted even with the income imputation it was understood defendant "would [neither] be able to meet her budget, nor the marital standard, without pulling money from her investments." Counsel argued the income streams the court could use to calculate the guidelines had to be "regular and reliable" and "a lump sum distribution or pulling from investment or an asset for purposes of covering bills is not income for purposes of [the] child support calculation." Moreover, as defendant drew down on her assets, the interest income reported on the tax return would be less. Counsel argued the tax return accurately depicted defendant's "total income stream."[2] The judge agreed and told counsel she no longer needed to argue the point.

As for parenting time, defendant's counsel repeated the arguments in her client's certification regarding why there was no change in circumstances.

---

[2] Counsel noted the parties could voluntarily exchange the 2021 returns once they were filed. We encourage, but do not require, the parties to do this to avoid further motion practice.

12

Defendant agreed plaintiff's fiancé could pick up and drop off the children, but argued the fiancé should not be involved in child-related decisions.

Following lengthy oral argument, the judge announced he intended to change his tentative decision to note the children could be dropped off at home if a known adult was present. Plaintiff's counsel sought rebuttal, but the judge concluded the argument.

The judge issued a final order and written opinion. He concluded there was no change in circumstances warranting a modification of parenting time. The judge found the termination of alimony was a change in circumstances necessitating the recalculation of child support. He declined to include defendant's non-income-producing inherited assets in the calculation and used her 2021 W-2s and the monthly distributions noted from her IRA and Prudential stock. He concluded as follows:

> The inclusion of property acquired by gift or inheritance in the computation of gross income is fact-sensitive. Weishaus v. Weishaus, 180 N.J. 131, 145 (2004). Appendix IX-B of the Child Support Guidelines explains that, typically, monetary gifts and income-producing property inherited by a party are included in that party's income calculation. However, non-income producing assets received by gift or devise are generally excluded from this party's income determination.

The judge then ran the guidelines using a weekly gross income of $771 for defendant and $2,504 for plaintiff.

The judge found the children's activities benefitted them and their health. As a result, the parties were ordered to bear these expenses equally pursuant to the MSA. The parties were ordered to pay the unreimbursed medical expenses in accordance with their share of the income under the new guidelines calculation as follows: plaintiff, seventy-one percent, and defendant twenty-nine percent.

As for the parties' counsel fee requests, the judge noted our law "do[es] not abide by the proposition that 'loser pays' and generally each party should pay his or her own attorneys' fees." After reciting the Rule 5:3-5(c) factors, the judge concluded "both parties appear to be litigating in good faith and the [c]ourt does not believe that the awarding of counsel fees and costs to either party in this matter is warranted at this time."

The balance of the relief granted and denied remained the same as in the tentative decision, including the bar on plaintiff's fiancé from making decisions regarding the children. This appeal followed.

I.

"Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "We do 'not disturb the "factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "However, . . . '[t]o the extent that the trial court's decision constitutes a legal determination, we review it de novo.'" Landers v. Landers, 444 N.J. Super. 315, 319 (App. Div. 2016) (alteration in original) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)).

II.

Plaintiff argues the motion judge's finding there was no change in circumstances warranting a modification of parenting time was an error and the judge failed to make adequate findings. He reprises the arguments he made to the judge and asserts there should have been a plenary hearing to address the parenting time dispute.

A-2473-21

Where there is already an agreement affecting custody and parenting time in place, it is presumed it "embodies a best interests determination."  Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993).  Therefore, "'[a] party seeking modification . . . must meet the burden of showing changed circumstances and that the agreement is now not in the best interests of a child.'" Slawinski v. Nicholas, 448 N.J. Super. 25, 33 (App. Div. 2016) (alteration in original) (quoting Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 152 (App. Div. 2003)).  A plenary hearing is only necessary where there are material disputes in fact and where a hearing "would assist the court in making its determination." P.T. v. M.S., 325 N.J. Super. 193, 214 (App. Div. 1999) (citing Fusco v. Fusco, 186 N.J. Super. 321, 327 (App. Div. 1982)).  We review orders concerning custody and parenting time for an abuse of discretion.  Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015).

Pursuant to these principles, we discern no error in the motion judge's finding that plaintiff failed to show a change in circumstances affecting the best interests of the children, warranting either a modification of parenting time or a plenary hearing.  Plaintiff's relocation occurred several years before he filed his post-judgment motion, and we are unpersuaded it had the potential to positively impact the dynamics of parenting time to warrant a modification.  Indeed, aside

16

from the lack of objective evidence supporting plaintiff's claim the children wanted more parenting time, plaintiff's track record of supporting the children's activities and expenses necessitated defendant having to file an enforcement motion. We are unconvinced the judge's decision was against the weight of the evidence and that the facts supported an increase in parenting time.

The judge's refusal to grant plaintiff's fiancé decision-making authority was not an abuse of discretion. The authority to make day-to-day decisions affecting children is typically reserved to the either the parent of primary residence or the parent of alternate residence when the children are with that parent. Pascale v. Pascale, 140 N.J. 583, 598-99 (1995). Similarly, the "major" decisions affecting the health, education, and welfare of children is reserved to those vested with legal custody, id. at 597; in this case, only the parties. Moreover, the judge was under no obligation to make this relief reciprocal to defendant's fiancé because there was no objective evidence in the record her fiancé was involved in decision-making affecting the children. Additionally, plaintiff's notice of motion did not enumerate this request as part of the relief sought. R. 1:6-2(a).

## III.

Plaintiff argues the child support recalculation was incorrect because the judge used the wrong income figure for defendant, further resulting in an incorrect calculation of each party's share of the total family income. He asserts the judge accepted the figures in defendant's CIS and that she depleted her assets despite the deficiencies and omissions pointed out by plaintiff and failed to impute the correct income to defendant. Plaintiff argues the judge failed to adjust the fixed expenses in the guidelines to account for the fact defendant has no mortgage.

The child support guidelines are presumptive absent a showing of good cause. Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 2, www.gannlaw.com (2024). The guidelines recognize "child support is a continuous duty of both parents . . . [and] children are entitled to share in the current income of both parents . . . ." Id. at ¶ 1.

> For the purpose of these guidelines, gross income, is all earned and unearned income that is recurring or will increase the income available to the recipient over an extended period of time. When determining whether an income source should be included in the child support guidelines calculation, the court should consider if it would have been available to pay expenses related to the child if the family would have remained intact . . . and how long that source would have been available to pay those expenses.

18

> [Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-B to R. 5:6A (2024).]

Unearned income from assets and inheritance as well as imputed income are sources of income for child support purposes. Ibid. "The court may exclude sporadic income [including dividends] if the party can prove that it will not be available in an equivalent amount in the future." Ibid.

"In determining the amount of income to be imputed [for child support purposes], the court must take into consideration the specific circumstances of the parent for whom income imputation is being considered, to the extent known, including but not limited to . . . assets [and] residence . . . ." Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 12, www.gannlaw.com (2024).

"The trial court has substantial discretion in making a child support award." Foust v. Glaser, 340 N.J. Super. 312, 315 (App. Div. 2001) (citing Pascale, 140 N.J. at 594). "If consistent with the law, such an award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." Id. at 315-16 (quoting Raynor v. Raynor, 319 N.J. Super. 591, 605 (App. Div. 1999)) (internal quotations omitted). "A trial judge's decision to impute income of a specified

amount will not be overturned unless the underlying findings are inconsistent with or unsupported by competent evidence." Storey v. Storey, 373 N.J. Super. 464, 474-75 (App. Div. 2004) (citations omitted).

Pursuant to these principles, we conclude the motion judge did not err when he calculated defendant's income utilizing her 2021 W-2 earnings and the unearned income she was receiving year-to-date for 2022. Although the guidelines attached to the MSA used the same imputed income to calculate alimony, the MSA's child support provision did not state the imputation would apply vis-à-vis child support going forward. This is understandable considering the alimony obligation lasted only three years, whereas the child support obligation for the parties' young children will be for a longer period.

More importantly, the judge relied upon defendant's current CIS to understand her current unearned income receipts rather than relying upon her 2020 tax return. Plaintiff has not convinced us the CIS was untruthful and contrary to his claims on appeal, the year-to-date income section listed defendant's bonds and noted they generated no income. This is not unusual, considering bond interest is not realized until the bond is liquidated. Furthermore, there was no 2021 tax return on which to rely when the judge

adjudicated the motion in February 2022 because defendant had not yet filed one.

It was not an abuse of discretion to decline to impute the unearned income reported on the 2020 return, especially considering defendant was no longer receiving alimony, which defrayed her expenses. Defendant certified she had to invade assets to meet her needs. Her current monthly CIS budget for herself and both children totaled $5,993 and exceeded her earned and unearned income. Even though defendant has no mortgage, her CIS shelter expenses totaled $1,836, accounting for one-third of her budget. We are convinced defendant would likely continue to draw down from her assets, undoubtedly increasing the liquidation, given the alimony termination.

These circumstances do not persuade us defendant's unearned income would be the same going forward, such that an ongoing imputation of the sort utilized for alimony was appropriate. Nor are we convinced the judge erred by declining to adjust the guidelines to account for the lack of a mortgage.

The calculation of child support using defendant's actual earned and unearned income receipts was not an abuse of discretion. However, we note defendant's income in the guidelines sheet recalculating child support contains a mathematical error. The judge said he was using defendant's W-2 income,

21

which totaled $34,698, and the unearned income from her TD IRA and Prudential stock, which was $528 per month and $205 per quarter. The unearned income annualized to $7,211.[3] Therefore, defendant's income in the guidelines calculation should have been $41,909, or $806 per week, not the $771 per week the judge used. We remand this aspect of the order to correct the mathematical error and for a recalculation of the guidelines.

IV.

Plaintiff argues the judge granted his requests to bar defendant from unilaterally incurring activity expenses and daycare decisions and required her to confer with him before incurring these expenses. However, the judge still granted defendant's requests that plaintiff pay his share of the activities, childcare and medical expenses for the children, and denied his request that defendant bear the entire cost of childcare. Plaintiff asserts the order was internally inconsistent and the judge's failure to address the incongruence rendered his decision arbitrary and capricious.

---

[3] We calculate this sum as follows: TD IRA unearned income of $528 per month divided by 4.3 weeks, multiplied by fifty-two weeks, equals $6,385 per year; and Prudential stock unearned income of $205 per quarter, divided by three months, divided by 4.3 weeks, multiplied by fifty-two weeks, equals $826 per year. $6,385 plus $826 equals $7,211.

A-2473-21

This argument lacks merit. As we noted, a child is entitled to the continuous support of both parents. A child's sports, activities, and work-related childcare are in the way of child support. Child Support Guidelines, Pressler & Verniero, <u>Current N.J. Court Rules</u>, Appendix IX-A to <u>R.</u> 5:6A, ¶ 8-9, www.gannlaw.com (2024). The same is true for a child's medical expenses. <u>Id.</u> at ¶ 26.

Withholding payment for these expenses would deprive the children of plaintiff's support. The judge's order struck the proper balance between assuring plaintiff's rights as a joint legal custodian and requiring defendant to adhere to the MSA going forward, while requiring plaintiff to meet his children's needs. We discern no reversible error.

V.

Plaintiff argues the judge erred when he declined to award him counsel fees. He asserts the judge paid short shrift to <u>Rule</u> 5:3-5(c) factors.

Counsel fee determinations, "rest[] within the sound discretion of the trial judge." <u>Gotlib v. Gotlib</u>, 399 N.J. Super. 295, 314-15 (App. Div. 2008) (quoting <u>Loro v. Colliano</u>, 354 N.J. Super. 212, 227 (App. Div. 2002)). "We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." <u>Strahan v. Strahan</u>, 402 N.J.

23

Super. 298, 317 (App. Div. 2008) (quoting <u>Rendine v. Pantzer</u>, 141 N.J. 292, 317 (1995)).

Generally, "the party requesting the fee award must be in financial need and the party paying the fees must have the financial ability to pay, and if those two factors have been established, the party requesting the fees must have acted in good faith in the litigation." <u>J.E.V. v. K.V.</u>, 426 N.J. Super. 475, 493 (App. Div. 2012) (citing <u>Guglielmo v. Guglielmo</u>, 253 N.J. Super. 531, 545 (App. Div. 1992)). When both parties have a "sufficient ability to satisfy [their] attorney's fee obligation, and neither . . . proceeded in bad faith," the court may justifiably deny the award of counsel fees. <u>Reese v. Weis</u>, 430 N.J. Super. 552, 586 (App. Div. 2013). The court also considers the following factors:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
>
> [<u>R.</u> 5:3-5(c).]

24

Although the motion judge did not make detailed findings under the Rule 5:3-5(c) factors, the record does not support an award of fees to plaintiff. Indeed, under any income scenario posited in this case, plaintiff's earnings more than doubled defendant's income. Although defendant has assets, she operated at a greater monthly deficit budget-wise than plaintiff and drew down on her assets to meet her needs. The judge's finding both parties operated in good faith is supported by the record.

Plaintiff incurred $4,496 in fees, and defendant incurred $5,269.50. Fees were not previously awarded to either party. The judge granted each party enforcement of the MSA in equal measure and neither party prevailed more than the other.

The sum of these circumstances did not support an award of counsel fees to plaintiff. The Rule 5:3-5(c) factors did not favor an award. The motion judge did not abuse his discretion.

## VI.

Plaintiff argues the court abused its discretion when it barred his attorney from rebutting defense counsel's argument after nearly an hour of oral argument. This argument lacks merit. Our review of the record and having considered

A-2473-21

plaintiff's arguments on appeal following full briefing do not convince us the failure to permit rebuttal argument would have led to a different outcome.

Finally, we decline to remand the remaining issue to a different judge because we do not share the view the judge acted arbitrarily and capriciously, mistakenly applied the law, or was so committed to his findings to warrant this result. The sole issue being remanded involves a mathematical correction to the guidelines, which is best addressed by a judge who is familiar with the matter.

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2473-21