**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5015-18T2

K.B.,[1]

    Plaintiff-Appellant,

v.

B.H. and C.D.,

    Defendants-Respondents.

_____

        Submitted March 17, 2020 – Decided April 17, 2020

        Before Judges Hoffman and Firko.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FD-04-1159-19.

        John P. Reilly, Jr., attorney for appellant.

        Respondents have not filed briefs.

PER CURIAM

---

[1]  We use initials to protect the identity of the child and the parties' privacy interests.  R. 1:38-3(d)(13).

Plaintiff K.B. appeals from a June 5, 2019 Family Part order awarding her limited grandparent visitation with her grandson, T.H. After a review of the contentions in light of the record and applicable legal principles, we reverse.

I.

We glean the following facts from the record. Plaintiff is the paternal grandmother of the minor child, T.H., who was born in April 2007. Defendants B.H. (father) and C.D. (mother), are T.H.'s parents. After T.H. was born, the child lived with defendants until 2010, when they separated. During that time, plaintiff provided food, diapers, clothing, and other necessities for the child. In addition to physical items, plaintiff provided childcare and purchased a crib and toys for T.H., which stayed at her home. Plaintiff also provided a bedroom in her home for T.H.

In 2011, father moved into a new home with T.H. and his then girlfriend. At this time, mother underwent substance abuse treatment at a crisis unit and later at an in-patient facility, which lasted until 2012. In the meantime, father married his girlfriend in August 2012 and had another child in July 2013. According to plaintiff, she had keys to her son's home and frequently visited and cared for T.H., prepared meals, and cared for T.H.'s dog.

A-5015-18T2

After father's baby was born in July 2013, plaintiff claimed that her visitation with T.H. increased, and she took him to her home to accommodate his parents' work schedules and the baby. According to plaintiff, T.H. was at her home about 100 days per year. T.H. has special education needs and plaintiff is a retired special education teacher. She paid for his tutoring sessions, picked him up from daycare, and tended to his special education needs, including homework. Plaintiff also claimed she assisted in T.H.'s kindergarten class and served as an aid at the school.

Between 2012 and 2014, the record shows there were multiple incidents of domestic violence between father and his wife. Thereafter, in 2014, father had an affair, his wife moved out, and his paramour moved in with him. Shortly thereafter, the relationship between father and his paramour became volatile, and led to domestic violence. Eventually, father's paramour moved out of his home.

After mother became sober, she filed a complaint against father seeking parenting time with T.H. On August 12, 2015, the Family Part judge awarded defendants joint custody of T.H. and designated father as the parent of primary residence and mother as the parent of alternate residence. The judge granted mother three overnight days per week with T.H., and the third week of each

month, but father refused to comply with the order. Consequently, mother had no parenting time with T.H. between March 2016 and March 2017.

During this time, plaintiff continued to assist father by picking up T.H. from daycare, ensuring his homework was completed, and taking T.H. to his extracurricular activities. From 2016 through 2018, T.H. spent up to four nights per week at plaintiff's home. She took T.H. to his doctor's appointments and celebrated Jewish holidays with him.

On October 22, 2017, father punched plaintiff (his mother) in the face and visitation between plaintiff and T.H. was suspended. Father took T.H. to work with him until 9:30 p.m., and T.H. slept on a sofa. However, by November 2017, father allowed plaintiff to take care of T.H. again.

Father was investigated by the Division of Child Protection and Permanency and accused plaintiff of reporting him, which she denied. Nonetheless, father told plaintiff she would no longer have access to T.H., and he could no longer stay at her home.

Thereafter, plaintiff contacted mother in an effort to enforce the August 12, 2015 order and seek visitation with T.H. during mother's parenting time. In response, mother filed a pro se application to enforce the 2015 order. On July 30, 2018, the judge held a hearing and entered an order providing: "Parties are

to attend mediation. Plaintiff's request for enforcement of parenting time is granted. Parenting time with mother shall be in accordance with the [August 12, 2015] order. Father's request for sole custody is denied . . . ."

The relationship between plaintiff and her son deteriorated. He terminated all contact between plaintiff and T.H. In retaliation against plaintiff, father refused to allow T.H. to attend camp or summer tutoring sessions, as he had done in previous years.

On September 10 and October 13, 2018, father allowed plaintiff to have visitation with T.H. for a total of six hours. Following the October 13, 2018 visit, father sent plaintiff a text message concerning her visitation going forward:

> The parties agree that [T.H.] may have limited contact with paternal grandmother [plaintiff]. [Plaintiff] is allowed to have dinner with [T.H.] one or two times per month, no longer than three hours at a time. [Plaintiff] is not allowed to pick up [T.H.] from school or his bus stop. [Plaintiff] is not allowed any vacation time with [T.H.]. [Plaintiff] is not allowed any overnights with [T.H.]. [Plaintiff] is not allowed to have information regarding [T.H.]'s medical, dental or school. [Plaintiff] is not allowed to go to [T.H.]'s school for any reason i.e. plays, dances, back to school night, graduations, etc.

Thereafter, mother called plaintiff about a bill she received from an attorney who appeared at the July 10, 2018 hearing. Mother advised plaintiff

5

that unless she paid the bill, visitation with T.H. would cease. After plaintiff's new counsel sent a letter to defendants in an effort to amicably resolve the grandparent visitation issue, they threatened to "have plaintiff arrested." Despite the cessation of grandparent visitation, T.H. contacted plaintiff by telephone about how he was feeling and when he was sick. After learning about these calls, mother blocked plaintiff's phone number, precluding T.H. from calling her.

On November 20, 2018, plaintiff filed a complaint seeking grandparent visitation. After the parties participated in a conference, parent education seminar, and mediation, the matter was scheduled for trial. Plaintiff's counsel requested that the trial be converted to a case management conference, but the court denied the request and proceeded to commence the trial. Since no responsive pleadings were filed and limited discovery was provided by defendants, plaintiff's counsel made the strategic decision to withdraw the complaint and not proceed to trial that day.

On May 7, 2019, plaintiff filed a new verified complaint seeking grandparent visitation alleging:

> The said minor child will suffer psychological, and physical and/or emotional harm if plaintiff is not permitted to exercise grandparent visitation with the said minor child. This harm will come from termination

of a long standing supportive and loving relationship. The child will also suffer the loss of the emotional support of a primary caregiver and attachment figure; the loss of a support person who gives the child consistency and security during [ . . . ] d[]efendant, [father's] many volatile relationships with various female partners including incidents of domestic violence and during the time the minor child's mother was suffering from substance abuse. The child will also suffer the loss of significant financial support from plaintiff. The child will also suffer from potential physical harm in that the plaintiff was the person who took the child to his pediatrician, for his dental and orthodontic appointments and the child has not had dental or orthodontic treatment since [father] took him. The child will also suffer the loss of the unique companionship, culture and religion that the child was exposed to with the [p]laintiff.

In her prayers for relief, plaintiff asserted that defendants be required to file responsive pleadings to her complaint; the matter be scheduled for a case management conference to address discovery under Rule 5:5-1(a); and that the matter be assigned a complex track. On a pendente lite basis, plaintiff sought grandparent visitation under the prior order of the court.

The judge conducted a grandparent visitation rights hearing on June 5, 2019. Plaintiff was represented by counsel at the hearing, and defendants appeared pro se by telephone. Mother testified that the parents had a fifty-fifty shared parenting plan, and she offered to allow plaintiff visitation during her

parenting time. In addition, mother testified that plaintiff had a great relationship with T.H. and that she took care of her grandchild.

Father testified that he would allow plaintiff limited grandparent visitation twice per month for five hours at a time, and additional time for Jewish holidays. Plaintiff's counsel opposed defendants' proffer as insufficient because no weekend time was offered.

The judge found that plaintiff failed to establish a case for grandparent visitation but stated:

> So, the [c]ourt, having listened to the testimony of the parents and the arguments of counsel as -- as well as reviewed the pleadings, the [c]ourt finds that the grandparent's complaint does not meet by a preponderance of the evidence[,] the standard with respect to grandparent's visitation. In a grandparent's complaint seeking visitation, a grandparent must first make a clear and specific allegation of concrete harm to the child, and that's in Daniels [v.] Daniels, 381 N.J. Super. 286 at 294 (App. Div. 2005). Such harm must be significant enough to justify [s]tate intervention in the parent child relationship. And that's at 293. A grandparent seeking visitation must prove by a preponderance of the evidence that denial of the visitation they seek would result in harm to the child. And that's in the Major case, 224 N.J. at 7, quoting Moriarty, as [we] all know.
>
> Substantively, it is a heavy burden, and that's in Slawinski, 448 N.J. Super. at 34. Okay? The . . . harm to the grandchild must be, quote, "a particular identifiable harm specific to the child," and that's in

A-5015-18T2

Mizrahi [v.] Cannon, 375 N.J. Super. 221 at 234 (App. Div. 2005). Missed opportunities for creating, quote, "happy memories," end quote, do not suffice. That's in Mizrahi, 375 N.J. Super. at 234. Only after a grandparent vaults the proof of harm threshold would the [c]ourt begin the best interest analysis. When a grandparent can't make a threshold showing, the complaint should be dismissed. Okay?

So -- however, we've made progress. The [c]ourt is willing, because the parents are willing, for the [c]ourt to enter an order today that the grandmother can have parenting time as indicated two times a month for at least five hours. She can have the Jewish holidays and she can coordinate with the parents, more specifically probably the mother, to have additional time if mutually agreed. I think that more than suffices in this particular matter. The parents are to be commended for their willingness to cooperate.

. . . .

And for -- so that the child can have a continuing relationship with [his] paternal grandmother. So, with that, the [c]ourt will issue an order with that schedule and certainly hopes that the parties will progress for the interest of the child and there won't be the amount of tension that there is. Okay? All right. So, the [c]ourt will send the parties an order.

The judge's ruling was not memorialized in a written order. On appeal, plaintiff argues that the judge erred by denying her request to require defendants to file responsive pleadings, not assigning the matter to a complex track, and not providing for an exchange of discovery or a case management conference.

Plaintiff also appeals the limited grandparent visitation she was awarded based upon the consent of defendants.

## II.

Here, plaintiff is pursuing a claim for grandparent visitation under the Grandparent Visitation Statute (GVS), N.J.S.A. 9:2-7.1.  Under the GVS, "[a] grandparent . . . of a child residing in [New Jersey] may make application before the Superior Court . . . for an order for visitation.  It shall be the burden of the applicant to prove . . . that the granting of visitation is in the best interests of the child."  N.J.S.A. 9:2-7.1(a).

The GVS represents an infringement on the fundamental right to parent, and the only interest that permits the State "to overcome the presumption in favor of a parent's decision and to force grandparent visitation over the wishes of a fit parent is the avoidance of harm to the child."  Moriarty v. Bradt, 177 N.J. 84, 115 (2003).  Therefore, to obtain visitation under the GVS, a grandparent must establish, by a preponderance of the evidence, that such visitation is necessary to avoid harm to the child.  Id. at 117.

Moreover, the court may not approve a visitation schedule unless the grandparent first establishes the potential for harm to the child and overcomes the presumption in favor of parental decision-making.  Rente v. Rente, 390 N.J.

10

Super. 487, 493-94 (App. Div. 2007). The court must determine if visitation is in the child's best interests, based on the factors enumerated in the GVS. Id. at 494. These factors include:

> (1) The relationship between the child and the applicant;
>
> (2) The relationship between each of the child's parents or the person with whom the child is residing and the applicant;
>
> (3) The time which has elapsed since the child last had contact with the applicant;
>
> (4) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;
>
> (5) If the parents are divorced or separated, the time sharing arrangement which exists between the parents with regard to the child;
>
> (6) The good faith of the applicant in filing the application;
>
> (7) Any history of physical, emotional or sexual abuse or neglect by the applicant; and
>
> (8) Any other factor relevant to the best interests of the child.
>
> [N.J.S.A. 9:2-7.1(b).]

We begin by summarizing a trial judge's obligations in resolving motions in family matters. It is well settled that following argument on a motion or hearing, the judge must enter a written order setting forth the court's rulings on

11

the motion.  See R. 4:42-1(a) (made applicable to family actions by R. 5:1.1).  These "rules contemplate written orders, notwithstanding the fact that the written order may be the memorialization of an oral order."  Hamm v. City of Clifton, 229 N.J. Super. 423, 427 (App. Div. 1988).  The prompt issuance of an order is obviously "necessary in any case where subsequent activity is bottomed upon that order[.]"  Stephenson v. Stephenson, 112 N.J. Super. 531, 533 (Ch. Div. 1970).

Rule 1:7-4(a) also clearly states that in addition to entering an appropriate written order, a trial judge "shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon . . . on every motion decided by a written order that is appealable as of right[.]"  See Shulas v. Estabrook, 385 N.J. Super. 91, 96 (App. Div. 2006) (requiring an adequate explanation of basis for court's action).  A judges' colloquy during a motion hearing is not a substitute for the judge's obligation to articulate findings of facts and conclusions of law.  Pardo v. Dominguez, 382 N.J. Super. 489, 492 (App. Div. 2006) (rejecting "the suggestion that a judge's comment or question in a colloquy can provide the reasoning for an opinion which requires findings of fact and conclusions of law . . . .").

The mere recitation of a published case or a statutory citation does not constitute adequate fact-finding. Instead, the judge's decision must clearly demonstrate that the litigants have been heard and their arguments considered. While a judge need not author a lengthy written opinion, or deliver an hour-long oral ruling to meet this requirement in every case, he or she must always state what facts form the basis of his or her decision, and then weigh and evaluate those facts in light of the governing law "to reach whatever conclusion may logically flow from" those facts. Slutsky v. Slutsky, 451 N.J. Super. 332, 357 (App. Div. 2017). Because justice requires no less, "[a]ll conclusions must be supported." Ibid.; see also Dorfman v. Dorfman, 315 N.J. Super. 511, 518 (App. Div. 1998) (holding that merely stating a conclusion that a litigant in a post-judgment matrimonial proceeding has not "shown . . . a substantial change of circumstances warranting a modification" of a prior order is "insufficient under [Rule] 1:7-4(a), [which] require[s] findings of fact and reasons given for conclusions reached.").

In sum, "[m]eaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008) (quoting Salch v. Salch, 240 N.J. Super. 441, 443

(App. Div. 1990)). Unfortunately, the trial court's rulings in this case did not satisfy these requirements.

As stated previously, the Family Part judge found plaintiff's grandparent visitation complaint did not meet the preponderance of the evidence standard, but allowed the limited visitation suggested by defendants. Based upon our careful review of the record, we note that the judge engaged in colloquy with the parties, but did not permit adequate cross-examination. Moreover, the judge made no finding that such visitation would be adverse to the best interests of T.H. The judge also did not assess the statutory factors under the GVS and did not consider whether plaintiff established a reasonable probability of success on the merits of her claim for visitation under the GVS.

Furthermore, the judge permitted visitation based solely upon defendants' proposal without analyzing the effects upon T.H. In Slawinski v. Nichols, 448 N.J. Super. 25, 32 (App. Div. 2016), we stated that "[a]bsent fraud or unconscionability, [appellate] courts will enforce family-related agreements as they would any contractual agreement." In this case, however, we reverse the Family Part judge because plaintiff established by a preponderance of the evidence that she is entitled to grandparent visitation based upon the overwhelming evidence of her close and consistent contact with T.H. since his

14

birth, and her showing that cessation of visitation would lead to a specified harm to the child. See Rente, 390 N.J. Super. at 494-95.

Defendants did not refute plaintiff's contention that she had been a caretaker for T.H. in the past. And, defendants presented no evidence that grandparent visitation by plaintiff would interfere with their custodial rights.

We are convinced that plaintiff has established, by a preponderance of the evidence, that significant harm to T.H. will result if she is denied grandparent visitation. Plaintiff articulated the nurturing and emotional role she has in T.H.'s life, not to mention the attention she uniquely offers for his special education needs, and the stable home environment she has provided to him. We therefore conclude the judge erred by not requiring defendants to file responsive pleadings to plaintiff's complaint and not scheduling a case management conference to address discovery under Rule 5:5-1(a) or assigning the matter to a complex track. Plaintiff is entitled to a plenary consideration of her claims.

On remand, the judge shall consider whether an expert should be appointed to address the grandparent visitation issue, and whether or not a guardian ad litem should be appointed for T.H., pursuant to Rule 5:8B, as may be required consistent with the goals of the GVS.

In summary, we reverse and remand to the Family Part judge to do the following:

> (1) direct defendants to file responsive pleadings to plaintiff's complaint;
>
> (2) conduct a case management conference within thirty days and address discovery issues pursuant to Rule 5:5-1(a);
>
> (3) assign the matter to a complex track;
>
> (4) consider the appointment of an expert and guardian ad litem; and
>
> (5) address pendente lite grandparent visitation for plaintiff.

Reversed and remanded to the Family Part for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5015-18T2