**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2334-22

W.E. and N.E.,

    Plaintiffs-Respondents,

v.

A.E.,

    Defendant-Appellant.

_____

Submitted January 16, 2024 – Decided July 15, 2024

Before Judges Gilson and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FD-08-0241-23.

Cockerill, Craig & Moore, LLC, attorneys for appellant (Christine C. Cockerill, on the briefs).

Charny, Karpousis, Altieri & Donoian, PA, attorneys for respondents (Melissa R. Knoerzer and Jeffrey Kasten, on the brief).

PER CURIAM

Defendant A.E. (Mother) appeals from: (1) the December 22, 2022 order of the Family Part granting grandparent visitation with A.E.'s two sons to her former in-laws, plaintiffs W.E. and N.E. (Grandparents); and (2) the March 15, 2023 order denying her motion for reconsideration.[1] We vacate both orders and remand for further proceedings.

I.

A.E. and C.E. (Father) were married in September 2017. They had two sons, now eight and six years old. Grandparents, the parents of C.E., sometimes watched the children while Father and Mother were at work.

During the marriage, Father developed an addiction to heroin, fentanyl, and methamphetamines. As a result, the marriage deteriorated and the couple separated. Father moved in with Grandparents and filed for divorce.

The couple executed a Marital Settlement Agreement (MSA), in which they agreed to joint custody of their sons. Because of Father's substance abuse, the court ordered his parenting time be supervised. Grandparents supervised Father's parenting time at their home.

---

[1] We use initials to identify the parties in order to preserve the confidentiality of these proceedings. R. 1:38-3(d)(3).

A-2334-22

Mother alleges the supervised parenting sessions with Father, which occurred sporadically, were traumatic and upsetting for the children because of his ongoing drug use. According to Mother, Grandparents focused on the best interests of Father and not the children by permitting parenting time when Father was actively using illegal substances and not in a condition to be around his sons. Mother also alleges that under Grandparents' supervision, Father exposed the children to his frenetic behavior, frightening demeanor, and possible trace amounts of dangerous substances.

On January 31, 2022, Father died at Grandparents' house from an overdose. At the time, the children were five and three years old. Since Father's death, Mother, who has sole custody of the children, has not permitted the children to see Grandparents. She alleges her sons have been healing since their Father's death, with the older child, who is in trauma therapy, discontinuing behavioral medication and reducing the prescription dosage of medication for his seizure disorder, which is exacerbated by stress. Mother attributes the children's improvement to them being away from Father and Grandparents, whom they associate with Father and his drug use.

A-2334-22

On October 11, 2022, Grandparents filed a complaint in the Family Part for grandparent visitation with the children. In support of their application, they relied, in part, on the following provision of the MSA:

GRANDPARENT VISITATION

a. Should either [Father] or [Mother] die prior to either child reaching the age of [sixteen], the surviving parent shall act in the best interests of the children when it comes to seeing the deceased parent's parents.

Grandparents also alleged that Mother "relied heavily" on them to care for the children and that they played an integral role in the children's upbringing before Father's death, particularly during the time Father lived in their home.

On December 21, 2022, after denying Mother's request for an adjournment, the family court heard oral argument from counsel. The court did not hold an evidentiary hearing or admit exhibits into evidence, although it considered certifications submitted on the motion. The court permitted Mother and the grandfather to make brief statements, but they were not subject to direct or cross-examination. At the conclusion of those statements, the court issued an oral opinion granting the application.

The court acknowledged that under the Grandparent and Sibling Visitation Act, N.J.S.A. 9:2-7.1 (the Act), and the legal principles set forth in Moriarity v. Bradt, 177 N.J. 84, 118 (2003), courts must undertake a two-step analysis to

decide a grandparent's application to visit a grandchild over the objection of a fit parent. First, the grandparent "must prove by a preponderance of the evidence that denial of visitation will harm the child." Major v. Maguire, 224 N.J. 1, 7 (2016). To do so, the grandparent must meet the "heavy burden," id. at 18, of showing "concrete harm to the children" because of the absence of grandparent visitation. Daniels v. Daniels, 381 N.J. Super. 286, 294 (App. Div. 2005). The necessary "proof of harm involves a greater showing than simply the best interest of the child." Slawinski v. Nicholas, 448 N.J. Super. 25, 34 (App. Div. 2016).

"Only after the grandparent vaults the proof-of-harm threshold will the court apply a best-interests analysis to resolve disputes over visitation . . . ." Ibid. (citing Moriarity, 177 N.J. at 117). At that point, the court applies the eight factors set forth in N.J.S.A. 9:2-7.1(b) (1) to (8) to determine whether visitation with the grandparent is in the child's best interests. "[I]t shall be prima facie evidence that visitation is in the child's best interest if the applicant had, in the past, been a full-time caretaker for the child." N.J.S.A. 9:2-7.1(c).

The family court, however, did not apply both prongs of the analysis. Instead, the court interpreted the grandparent visitation provision of the MSA as

5

the Mother's agreement to "skip" the first step of the statutory analysis should Father's parents apply for visitation with her sons. The court explained that it

> look[s] at this provision of the parents and [Mother], specifically, who has this right to decide how to govern her children's parenting and both parties in this agreement agree well, if one of us dies, we're skipping that step . . . and need to move to the best interest piece. So, they're taking upon themselves to agree between themselves, that you know what, we don't need to show [harm] because we just need to go to the best interest analysis.

The court also interpreted the provision as an agreement that in the event of Father's death "the grandparents would likely be involved" with the children. Thus, despite having concluded that "[t]here really isn't anything that's before the [c]ourt that's showing that since dad's death . . . the children are experiencing a harm" as a result of not having visitation with Grandparents, the family court applied a best-interests analysis to determine whether to grant Grandparents' application.

Although the family court did not hold an evidentiary hearing, it made findings of fact concerning the children's best interests. First, the court found that Grandparents were not the full-time caretakers of their grandchildren. It found, instead, that they provided periodic daycare while Mother was at work and supervised Father's parenting time. The court found Grandparents

6

maintained a good relationship with the children. In addition, the court found Mother failed to explain adequately why she does not wish the children to visit with Grandparents and did not produce evidence from a therapist supporting her claims regarding the older child's traumatic experiences at Grandparents' home.

With respect to the relationship between Mother and Grandparents, the court found

> I understand mom is just doing . . . what she believes to be in the best interests of the child[ren], which is to . . . put that part of their lives behind them, with dad and how the drug use was. I understand why she's doing that.
>
> But I can't find that the relationship between mom and grandma and grandpa . . . is unable to be fostered. Doesn't have to be the greatest relationship just has to be enough to be able to work together.

The court found an absence of evidence that visitation with Grandparents would "sour mom's relationship with" the children. The court also found Mother produced no evidence that Grandparents had abused or neglected the grandchildren.

Finally, the court stated:

> [t]he only thing that gives me pause is this whole issue about the therapist and the children saying – the children getting better now that they haven't seen grandma and grandpa.

7

> Well, without anything from the therapist or anything from any medical provider who's been looking at the children to make that professional determination. It's almost a (indiscernible) because . . . they got better, it had to have been because grandma and grandpa left. Well, there's other reasons that could apply, time has gone by, the child received . . . therapy sessions. There are other things that have been happening in the . . . children's lives beyond grandma and grandpa leaving, that may have made their lives better.
>
> I don't have anything from [Mother] showing that that's a problem. If something happens in the future and I do get something, well, that could be a change in circumstances and that could be something that could be brought up and say . . . we need to review this.

Thus, the court concluded, visitation with Grandparents is in the best interests of the children.

After issuing its decision, the family court denied Mother's application to have the children evaluated by a therapist to determine how, after a year-long separation, visitation with Grandparents should be conducted. Mom argued that reunification with Grandparents without safeguards could be traumatic and cause the children to regress from the progress they had made since Father's death.

A December 22, 2022 order granted Grandparents visitation with the children for one hour, twice a month, beginning in January 2023.

On January 11, 2023, Mother moved for reconsideration of the December 22, 2022 order. Mother supported her application with a certification setting forth evidence she argued she was unable to present in opposition to Grandparents' application because the family court did not grant her request for an adjournment, permit discovery, allow her to obtain an expert report, or hold an evidentiary hearing.

Mother certified that while parenting the children under Grandparents' supervision, Father nearly drown their youngest son by recklessly allowing the child's head to be submerged repeatedly in a pool while Father, who was intoxicated, was holding him and making whirlpools. She certified that this event was traumatic for both children. Mother also certified that Father's supervised parenting with Grandparents was sporadic in the year leading to his death, largely because of Father's persistent drug use and periods in rehabilitation. She also certified that during one supervised parenting session, Grandparents failed to give her older child medication for his seizure disorder, causing the child to have a seizure after he was returned to Mother.

In addition, Mother certified that the children are not bonded with Grandparents and that the younger child does not know who they are. According to Mother, when she told her children that Father had died, her older son said,

"[g]ood. Now I don't have to go there anymore." She certified that her older son experienced behavioral issues, problems concentrating at school, and frustration while Father was alive and that Father's physical appearance frightened him. According to Mother, Grandparents' home triggers the trauma the children suffered during supervised parenting with Father. The older son, Mother certified, will not allow her to drive on Grandparents' street on the way to school and cries if they travel near Grandparents' home. Mother certified that her older son has weekly counseling by a school therapist.

Mother further certified that the children have not mentioned Grandparents at all since Father's death. She also certified that when her marriage was intact, Grandparents took extended vacations without seeing the children. During those times, Mother certified, the children were not affected by Grandparents' absence. She certified that Grandparents continually enabled Father's drug abuse, hid his drug use from Mother, and constantly fought with her over issues involving the children. Mother certified that the children are not suffering mentally or emotionally from not seeing Grandparents.

Mother argued that the family court misinterpreted the grandparent visitation provision of the MSA. She certified that the attorney who represented her in negotiating that agreement was prepared to testify as a witness as to

Mother's intent when agreeing to the provision. Citing a disparity in the parties' wealth, Mother requested the court order Grandparents pay for a mutually agreed upon expert to evaluate the children and issue a report regarding their best interests.

Mother argued that in light of this evidence, the family court should reconsider the December 22, 2022 order and either: (1) deny Grandparents' application; or (2) hold an evidentiary hearing in which Grandparents have the burden of establishing both prongs of the Act before being granted visitation with the children. Grandparents opposed the motion and cross-moved for enforcement of the December 22, 2022 order.

Before the family court decided Mother's motion, Grandparents had a visit with the children. Mother was present. The parties offer divergent views of the success of the visit. Grandparents contend that the boys enjoyed the visit and that the older child asked if Grandparents could visit again the following day. Mother alleged that the children, particularly her older son, experienced anxiety before the visit, as they were afraid Grandparents would remove them from their home. According to Mother, after the visit, her older son asked why Father had been "so crazy" and expressed fears he would return from being dead, causing the child to become hysterical and cry. In addition, during the night after the

visit the older son had a seizure, which Mother alleges was brought on by the stress of associating his visit with Grandparents with their Father's drug use and death. He was treated in an emergency department of a hospital.

On March 15, 2023, the family court issued an oral opinion denying Mother's motion. The court concluded: (1) it did not err when it denied Mother's request for an adjournment before deciding Grandparents' application; and (2) it did not misinterpret the MSA. For the first time, the court held that Grandparents were third-party beneficiaries of the MSA, with standing to enforce the grandparent visitation provision. A March 15, 2023 order denies Mother's motion and grants Grandparents' cross-motion.

This appeal followed. Mother argues the family court: (1) misinterpreted the grandparent visitation provision of the MSA, which does not waive Mother's constitutional rights with respect to her children or any provisions of the Act; (2) erroneously found that Grandparents are third-party beneficiaries under the MSA; and (3) denied her due process rights by not permitting discovery and deciding disputed facts without holding an evidentiary hearing. On August 30, 2023, we stayed the family court's December 22, 2022 order.

We agree that the family court misinterpreted the grandparent visitation provision of the MSA. The settlement of matrimonial disputes is encouraged and highly valued in our court system. Quinn v. Quinn, 225 N.J. 34, 44 (2016). "The basic contractual nature of matrimonial agreements has long been recognized." Pacifico v. Pacifico, 190 N.J. 258, 265 (2007) (citing Harrington v. Harrington, 281 N.J. Super. 39, 46 (App. Div. 1995)). "At the same time, 'the law grants particular leniency to agreements made in the domestic arena,' thus allowing 'judges greater discretion when interpreting such agreements.'" Id. at 266 (quoting Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992)).

"As a general rule, courts should enforce contracts as the parties intended. Similarly, it is a basic rule of contractual interpretation that a court must discern and implement the common intention of the parties." Ibid. (citations omitted). "The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'" Ibid. (quoting Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953)).

Our task is to "ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain." Celanese Ltd. v. Essex Cty. Imp. Auth., 404 N.J. Super. 514, 528 (App. Div. 2009). "Where the terms of a contract are clear, we enforce the contract as written and ascertain the intention of the parties based upon the language." Pollack v. Quick Quality Rests., Inc., 452 N.J. Super. 174, 187-88 (App. Div. 2017). "[U]nambiguous contracts are to be enforced as written . . . ." Grow Co. v. Chokshi, 403 N.J. Super. 443, 464 (App. Div. 2008). Our review of the family court's interpretation and construction of a contract is de novo. Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014).

We see no indication in the plain language of the grandparent visitation provision of the MSA that Mother waived her constitutional and statutory rights to decide who has visitation with her children. The provision merely restates the fundamental premise that as sole custodian of the children after Father's death, Mother has the right to determine whether visitation with Grandparents is in the best interests of her children. That right, recognized by the Supreme Court in Troxel v. Granville, 530 U.S. 57 (2000), is the foundational basis for the Act and the holding in Moriarity, both of which establish significant

14

obstacles to protect a parent's best-interests determination from interference by grandparents and the courts.

Nothing in the MSA expressly waives the Act or the first factor of its statutory framework, which imposes on grandparents the heightened burden of establishing specific harm "to avoid imposing an unnecessary and unconstitutional burden on fit parents who are exercising their judgment concerning the raising of their children . . . ." Daniels, 381 N.J. Super. at 294. Otherwise, "any grandparent could impose the economic and emotional burden of litigation on fit parents, and on the children themselves, merely by alleging an ordinary grandparent-child relationship and its unwanted termination." Id. at 293. As the Supreme Court explained,

> proof of harm involves a greater showing than simply the best interests of the child. Id. at 116 (stating that a dispute between a "fit custodial parent and the child's grandparent is not a contest between equals[,]" consequently "the best interest standard, which is the tiebreaker between fit parents, is inapplicable") . . . . The harm to the grandchild must be "a particular identifiable harm, specific to the child." Mizrahi v. Cannon, 375 N.J. Super. 221, 234 (App. Div. 2005). It "generally rests on the existence of an unusually close relationship between the grandparent and the child, or on traumatic circumstances such as a parent's death." [Daniels, 381 N.J. Super. at 294]. By contrast, missed opportunities for creating "happy memories" do not suffice. Mizrahi, 375 N.J. Super. at 234.

> [Slawinski, 448 N.J. Super. at 34 (first alteration in original).]

Nor does the MSA mention Moriarity.

Given the significant rights provided to Mother by the Act and Moriarity, a waiver of those rights needed to be in clear and unequivocal terms. "Waiver is the 'intentional relinquishment or abandonment of a known right or privilege.'" Mazdabrook Homeowners' Ass'n v. Khan, 210 N.J. 482, 505 (2012) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). "Although rights may be waived, courts 'indulge every reasonable presumption against waiver of fundamental constitutional rights.'" Ibid. "[A] waiver of constitutional rights in any context must, at the very least, be clear." Ibid. (quoting Fuentes v. Shevin, 407 U.S. 67, 95 (1972) (alteration in original)).

No such express and clear surrender of rights is set forth in the MSA. Grandparents produced no evidence that Mother's intention when agreeing to the grandparent visitation provision was to allow Grandparents and the courts to second guess her best-interests determination in the absence of a showing by Grandparents that the children are suffering a particular, identifiable harm because they do not have visitation with Grandparents.

Nor do we agree with the family court's interpretation that the MSA evidences an intent by the parties that Grandparents would "likely be involved"

16

in the children's lives if Father dies. The agreement does not state that Grandparents shall have visitation with the children in the event of Father's death. To the contrary, the MSA states that Mother will determine whether grandparent visitation is in the children's best interests. The provision contemplates the possibility that Mother will decide that the best interests of the children are not served by permitting visitation with Grandparents. Mother's determination may be overridden only through Grandparents' satisfaction of the factors set forth in the Act in compliance with the holding in Moriarity.

Because the family court misinterpreted the grandparent visitation provision of the MSA, it erred when it relieved Grandparents of their statutory obligation to establish the first prong of the Act before proceeding to a best-interests determination. We therefore vacate the December 22, 2022 order and remand for a hearing at which Grandparents are required to satisfy both of the elements of the Act. We remind the family court that the burden of persuasion rests on Grandparents with respect to all elements of their application. N.J.S.A. 9:2-7.1(a).

We also conclude that the family court erred when it made its best-interests determination without holding an evidentiary hearing or permitting the parties to obtain an expert evaluation of the effects on the children of a

resumption of visitation with Grandparents. Mother raised significant factual issues regarding the emotional and physical impact of Father's substance abuse, erratic behavior, and parenting time in Grandparents' presence and at Grandparents' home. In addition, the parties dispute the success of the January 2023 visit and whether the older son's exposure to Grandparents resulted in a subsequent seizure. Therefore, all the findings made by the family court in support of the December 22, 2022 and March 15, 2023 orders are vacated because they were made on disputed records without an evidentiary hearing.

On remand, the family court shall resolve these factual disputes and any others that may arise at an evidentiary hearing on remand. We leave to the family court to determine in the first instance Mother's application to have Grandparents share in the expense of retaining an expert and other costs that may be incurred on remand.

Because we vacate the December 22, 2022 order, we also vacate the March 15, 2023 order denying Mother's motion for reconsideration and granting Grandparents' motion to enforce. In light of our conclusions, we need not determine whether Mother and Father intended Grandparents to be third-party beneficiaries under the MSA. See Reider Cmtys., Inc. v. Twp. of N. Brunswick, 227 N.J. Super. 214, 222 (App. Div. 1988) ("The standard applied by courts in

determining third-party beneficiary status is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts . . . .") (quotations omitted).

Because the judge who heard the matter has already engaged in weighing the disputed contentions of the parties, the hearing on remand shall take place before a different judge. See <u>N.J. Div. of Youth & Family Servs. v. A.W.</u>, 103 N.J. 591, 617 (1986).

The orders are vacated. The matter is remanded to the family court for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

A-2334-22